Kevin BAYNES, Plaintiff,

v.

**AMERICAN RED CROSS and Ronald Neadle, Defendants.**

No. 1:98–CV–1904.

United States District Court, N.D. New York.

Aug. 25, 2000.

Finkelstein, Levine, Gittelsohn & Partners, for Plaintiff, Newburgh, NY, David J. Pollock, of counsel.

Maynard, O'Connor, Smith, & Catalinotto LLP, for Defendants, Albany, NY, Christopher K.H. Dressler, of counsel.

## MEMORANDUM DECISION AND ORDER

HURD, District Judge.

### I. INTRODUCTION

The above entitled action was commenced on October 30, 1998, in the Supreme Court, State of New York, County of Schenectady. After issue was joined, the case was removed, pursuant to 28 U.S.C. § 1441, because the defendant American Red Cross ("ARC") charter, 36 U.S.C. § 2, vests original jurisdiction in federal court in all cases in which it is a party.

The defendants moved for summary judgment pursuant to Fed.R.Civ.P. 56.

---

The plaintiff opposes. Oral argument was held on July 28, 2000, in Albany, New York. Decision was reserved.

## II. FACTS

The plaintiff brings this action for personal injuries allegedly sustained when he was involved in an accident on September 30, 1997. He was riding a bicycle and was in contact with a station wagon being operated by the defendant Ronald Neadle ("Neadle"), and owned by the defendant ARC. The accident occurred at the corner of Clinton Street and State Street in the City of Schenectady, New York.

The Local Rules provide as follows:

**Summary Judgment Motions.**

Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits. *Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.*

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. *Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.*

L.R. 7.1(a)(3)(emphasis in original).

The defendants properly submitted a detailed statement of material facts pursuant to Local Rule 7.1(a)(3). The plaintiff did not file a response. Although improper, the attorney's affirmation in opposition, which did challenge paragraph Nos. 8 and 16, will be considered. Otherwise, the defendants' statement of material facts is deemed true.

Paragraph 8 reads as follows: "Before reaching the crosswalk, defendant Ronald Neadle brought the station wagon to a complete stop ." (Defs.7.1(a)(3) Statement.) Because the deposition testimony of both the plaintiff and Neadle, and the affidavits of two alleged eye witnesses confirm this fact, it is accepted.

Paragraph 16 reads as follows: "The Red Cross station wagon was at a complete stop before and when Kevin Baynes struck it." *Id.* Viewing the evidence in a light most favorable to the non-moving plaintiff, this statement is rejected, and for the purposes of this motion, a finding is made that the defendants' vehicle was, in fact, moving at the time of impact.

The only additional fact that the plaintiff raises is that Neadle did not sound his horn prior to impact. This fact is not contradicted by the defendants.

Other than the additional facts that Neadle did not sound his horn and was moving at the time of impact, for the purposes of this motion, the statement of material facts submitted by the defendants is adopted, and a copy is attached hereto as Exhibit A and made a part hereof.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and that the moving

party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met the burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial ." Fed.R.Civ.P. 56: *Liberty Lobby Inc.,* 477 U.S. at 250, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.,* 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. Thus, summary judgment is proper where there is "little or no evidence ... in support of the non-moving party's case." *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

## B. *Negligence Claims*

Ordinarily in a summary judgment motion, a "court ... may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* —— U.S. ——, ——, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). However, since the plaintiff did not deny the statement of material facts submitted by the defendants, he conceded that Neadle did, in fact, look to his right; that his vision was obscured; that he inched forward; and he observed the plaintiff on a bicycle coming down the sidewalk on the south side of State Street at a fast rate of speed, come off the curb, fly over the handlebars and strike his vehicle.

However, the fact that Neadle looked to his right and made certain observations rests solely upon his testimony. Ordinarily, absent the concessions by the plaintiff, this would be a credibility issue for the jury.[1] A jury could reject Neadle's testimony and find that he was not credible. For example, despite his testimony, a jury would be permitted to find that because he was preoccupied with looking left at traffic in anticipation of a right turn, he never did look right; never did see the plaintiff bicyclist before impact; and moved his vehicle directly into the path of the plaintiff. In other words, he moved from a stopped position without being sure traffic was clear. Such jury findings would support a verdict against the defendants on negligence and proximate cause.

However, plaintiff advances only two arguments in opposition to the motion for summary judgment; the first being that defendant Neadle was negligent in failing to sound his horn prior to impact. This position was withdrawn, however, during

1. "[T]he court ... must disregard all evidence favorable to the moving party that a jury is not required to believe." *Reeves,* —— U.S. at ——, 120 S.Ct. at 2110. A jury would not be required to believe Neadle. However, "the court should give credence to ... evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* (internal quotation and citation omitted). Unlike his stopping before the crosswalk, the fact that Neadle looked to his right and observed plaintiff on a bicycle rests solely upon his testimony and not from any independent source or disinterested witness.

oral argument, apparently on the basis that, since the plaintiff admitted seeing the defendant's vehicle prior to impact, whether or not the Neadle sounded his horn could not have been the proximate cause of the accident.

The second argument advanced by the plaintiff is that the defendant violated the New York State Vehicle and Traffic Law which states as follows:

> Traffic facing a steady circular red signal may cautiously enter the intersection to make a right turn after stopping as required by paragraph one of this subdivision, .... Such traffic shall yield the right-of-way to pedestrians within a marked or unmarked crosswalk at the intersection and to other traffic lawfully using the intersection.

N.Y. Veh. & Traf. Law § 1111(d)(2)(a)(McKinney 1996).

The undisputed fact is that Neadle did stop prior to attempting to make the right hand turn. Further, the admitted facts are that he proceeded to prudently and cautiously enter the intersection. His vehicle was struck on the right hand side, not by a pedestrian or other traffic lawfully using the intersection, but by a bicyclist operating in violation of both Vehicle and Traffic Law § 1234(a) and (c) and the City of Schenectady Codes § 248–23. (*See* Defs.' Mem. in Supp. of Mot. for Summ. J.App.)

As noted above, the plaintiff has conceded all credibility issues to Neadle regarding his acts and observations prior to the accident except as to whether or not he sounded his horn, came to a stop before the crosswalk, or was moving or stopped at the time of the impact.[2] Therefore, no genuine issues of material fact exist to establish negligence on the part of the defendants. The fact that Neadle did not sound his horn and was moving very slowly at the time of impact were not acts of negligence which could be considered a proximate cause of this accident in view of

the point of impact to the vehicle, and the plaintiff's operation of his bicycle.

## IV. CONCLUSION

The plaintiff has failed to raise an issue of material fact upon which a reasonable jury could find negligence on the part of the defendants which would have been a proximate cause of the accident and his resulting injuries. The defendants' motion for summary judgment must be granted.

Therefore, it is

ORDERED that

1. The defendants' motion for summary judgment is GRANTED; and

2. The complaint is DISMISSED.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

### EXHIBIT "A"

Kevin BAYNES, Plaintiff,

against

AMERICAN RED CROSS and Ronald NEADLE, Defendants.

98–CIV–1904(DNH)(RWS)

U.S. DISTRICT COURT

N.D. OF N.Y.

JUNE 15, 2000.

LAWRENCE K. BAERMAN, CLERK

ALBANY

### STATEMENT OF MATERIAL FACTS

Defendants, American Red Cross and Ronald Neadle, pursuant to Local Rule 7.1(a)(3), submit the following Statement of Material Facts which defendants contend are not in dispute:

1. Defendant Ronald Neadle is a volunteer driver for the defendant American Red Cross. *See, Pretrial Deposition of Ronald Neadle, p. 4,*

---

**2.** This, of course, severely limits the issues to     be reviewed.

attached as Exhibit "F" to Affidavit of attorney Christopher K.H. Dressler.

2. At the time of the accident which is the subject of this lawsuit, defendant Ronald Neadle was driving an American Red Cross station wagon which he had operated on occasion for approximately one year. *See, Pretrial Deposition of Ronald Neadle, p. 9, attached as Exhibit "F" to Affidavit of attorney Christopher K.H. Dressler.*

3. On September 30, 1997, in the course of his volunteer driving duties for defendant American Red Cross, defendant Ronald Neadle was involved in an accident at the corner of Clinton Street and State Street in the City of Schenectady, State of New York. *See, Pretrial Deposition of Ronald Neadle attached as Exhibit "F" to Affidavit of attorney Christopher K.H. Dressler.*

4. Prior to the accident, defendant Neadle had been heading North on Clinton Street in the Red Cross station wagon intending to turn right on to State Street. *See, Pretrial Deposition of Ronald Neadle, pp. 10–11, attached as Exhibit "F" to Affidavit of attorney Christopher K.H. Dressler.*

5. The area where the accident occurred was familiar to defendant Ronald Neadle as he had driven through this area at least fifty (50) times prior to the date of the accident. *See, Pretrial Deposition of Ronald Neadle, p. 28, attached as Exhibit "F" to Affidavit of attorney Christopher K.H. Dressler.*

6. As defendant Ronald Neadle approached the intersection of Clinton and State Street in the Red Cross Station wagon, he noticed the light at the intersection was red and slowed down. *See, Pretrial Deposition of Ronald Neadle, p. 30, attached as Exhibit "F" to Affidavit of attorney Christopher K.H. Dressler.*

7. Before slowing down for the red light, while driving north on Clinton Street, defendant Ronald Neadle's highest rate of speed was approximately ten miles per hour. *See, Pretrial Deposition of Ronald Neadle, p. 40, attached as Exhibit "F" to Affidavit of attorney Christopher K.H. Dressler.*

8. Before reaching the crosswalk, defendant Ronald Neadle brought the station wagon to a complete stop. *See, Pretrial Deposition of Ronald Neadle, pp. 39, 42, 45, attached as Exhibit "F" to Affidavit of attorney Christopher K.H. Dressler.*

9. A motorist is allowed to make a right turn on a red light at the corner of Clinton and State Streets. *See, Pretrial Deposition of Ronald Neadle, p. 52, attached as Exhibit "F" to Affidavit of attorney Christopher K.H. Dressler.*

10. Mr. Neadle looked to his left and right and observed that there was minimal traffic present on State Street. *See, Pretrial Deposition of Ronald Neadle, pp. 53–54, attached as Exhibit "F" to Affidavit of attorney Christopher K.H. Dressler.*

11. Neadle then further looked both ways for pedestrians seeking to cross the street, saw no pedestrians intending to enter the crosswalk, waited half a minute, and then began to slowly inch forward at a rate no faster than a walk while continuously looking left and right for pedestrians. *See, Pretrial Deposition of Ronald Neadle, pp. 44, 54–55, 59, attached as Exhibit "F" to Affidavit of attorney Christopher K.H. Dressler.*

12. Defendant Neadle's view of the sidewalk up State Street to his right while stopped before the crosswalk and while inching forward on Clinton Street was sufficient to observe pedestrian traffic in the vicinity but was obscured as to seeing farther than fifty (50) feet up the street because of the angle of that block and a building (the Fleet Bank Building) on the corner thereof. *See, Pretrial Deposition of Ronald Neadle, pp. 57, 63–64, attached as Exhibit "F" to Affidavit of attorney Christopher K.H. Dressler.*

13. While inching forward, Ronald Neadle noticed plaintiff Kevin Baynes coming into his view at a fast rate of speed down the sidewalk on the South side of State Street on a bicycle and immediately stopped the vehicle for a second time with the front of the Red Cross station wagon occupying most of the crosswalk. *See, Pretrial Deposition of Ronald Neadle, pp. 46–48, 55–59, attached as Exhibit "F" to Affidavit of Christopher K.H. Dressler.*

14. Defendant Ronald Neadle had never observed a bicyclist traveling down the sidewalk on the South side of State Street against traffic on any of his approximately fifty (50) visits to the intersection. *See, Pre-trial Deposition of Ronald Neadle, pp. 28–29, attached as Exhibit "F" to Affidavit of Christopher K.H. Dressler.*

15. Ronald Neadle had moved forward less than six feet when he brought the station wagon to a complete stop for the second time upon observing plaintiff Kevin Baynes up the block coming towards him. *See, Pretrial Deposition of Ronald Neadle, p. 51, attached as Exhibit "F" to Affidavit of Christopher K.H. Dressler.*

16. The Red Cross station wagon was at a complete stop before and when Kevin Baynes struck it. *See, Pretrial Deposition of Ronald Neadle, pp. 40–41, attached as Exhibit "F" to Affidavit of Christopher K.H. Dressler.*

17. The accident was witnessed by various persons including John McDonald who was across the street on the northeast corner of Clinton and State Streets. *See, Affidavit of witness John McDonald, attached to Affidavit of attorney Christopher Dressler as Exhibit "G."*

18. McDonald confirms that while he was approaching the AlBank building on the northeastern corner of Clinton and State streets, he saw plaintiff on his bicycle "weaving in and out" of the pedestrian traffic on the south side of State Street while traveling downhill on that sidewalk at a high rate of speed. *See, Affidavit of witness John McDonald, attached to Affidavit of attorney Christopher Dressler as Exhibit "G".*

19. McDonald further confirms that the gray Red Cross station wagon was stopped at the corner of Clinton Street facing State street when the plaintiff bicyclist left the sidewalk and ran into the station wagon. *See, Affidavit of witness John McDonald, attached to Affidavit of attorney Christopher Dressler as Exhibit "G".*

20. Plaintiff Kevin Baynes was traveling on his bicycle to work at the VanDyck Restaurant on September 30, 1997, when this accident occurred. *See, Pre-trial Deposition of plaintiff Kevin Baynes at pp.*

*50–54, attached as Exhibit "D" to attorney Dressler's Affidavit.*

21. The weather was clear and sunny. *See, Pre-trial Deposition of plaintiff Kevin Baynes at p. 52, attached as Exhibit "D" to attorney Dressler's Affidavit.*

22. Mr. Baynes testified that he was traveling downhill on State Street riding his bicycle on the sidewalk before this accident happened near the corner of State and Clinton streets. *See, Pre-trial Deposition of plaintiff Kevin Baynes at pp. 52–54, attached as Exhibit "D" to attorney Dressler's Affidavit.*

23. Mr. Baynes testified that at some juncture he used his brake to slow down because he saw the car Mr. Neadle was driving. *See, Pre-trial Deposition of plaintiff Kevin Baynes at pp. 56–57, attached as Exhibit "D" to attorney Dressler's Affidavit.*

24. Plaintiff's last recollection was applying the brakes on his bicycle and now remembers nothing further. *See, Pre-trial Deposition of plaintiff Kevin Baynes at pp. 56–57, 74, attached as Exhibit "D" to attorney Dressler's Affidavit.*

25. When Mr. Baynes first saw the Red Cross vehicle, Baynes was approximately one-half to one full block away and acknowledged that the vehicle in front of him was stopped in the crosswalk at Clinton and State Streets preventing him from crossing the intersection using that route. *See, Pre-trial Deposition of plaintiff Kevin Baynes at pp. 58–59, attached as Exhibit "D" to attorney Dressler's Affidavit.*

26. Mr. Baynes never saw the Red Cross vehicle moving. *See, Pre-trial Deposition of plaintiff Kevin Baynes at p. 63, attached as Exhibit "D" to attorney Dressler's Affidavit.*

27. After the accident, on April 3, 1998, in the presence of his attorney, plaintiff Kevin Baynes gave a recorded statement to defendants' representative, a transcript of which he was asked to review at his deposition. *See, Pre-trial Deposition of plaintiff Kevin Baynes at p. 70, attached as Exhibit "D" to attorney Dressler's Affidavit, and, transcript of Recorded Interview attached to attorney Dressler's Affidavit as Exhibit "E."*

28. At his deposition, after reviewing the transcript of the Recorded Interview, Mr. Baynes testified that the statements he gave in the Recorded Interview were accurate to the best of his recollection as to how the accident occurred. *See, Pre-trial Deposition of plaintiff Kevin Baynes at p. 71, attached as Exhibit "D" to attorney Dressler's Affidavit, and, transcript of Recorded Interview attached to attorney Dressler's Affidavit as Exhibit "E."*

29. The Recorded Interview confirms that Baynes saw the defendants' vehicle approximately twenty to thirty (20–30) yards in front of him in plain site while coming down the hill on the sidewalk on his bicycle. *See, transcript of Recorded Interview at p. 8, attached to attorney Dressler's Affidavit as Exhibit "E."*

30. Mr. Baynes explained that he saw the defendants' vehicle down the hill in front of him and that "I'd seen—I had enough time to do all my maneuvers and clear this guy, but I don't know what happened

after that." *See, transcript of Recorded Interview at p. 8, attached to attorney Dressler's Affidavit as Exhibit "E."*

31. After seeing defendants' vehicle, Baynes chose not to take another route, but instead, his intention at that point was to veer to the right and proceed in front of the defendants' vehicle which was stopped at this time. *See, transcript of Recorded Interview at p. 8, attached to attorney Dressler's Affidavit as Exhibit "E."*

32. Plaintiff remembered going over a curb-cut ramp with the intention of proceeding in front of the defendants' stopped vehicle and continuing on his way. He does not remember any impact with the vehicle. *See, transcript of Recorded Interview at pp. 8–9, attached to attorney Dressler's Affidavit as Exhibit "E."*

33. Defendant Neadle understood the curb-cut ramp to be for the purposes of pedestrians and wheelchairs. *See, Pre-trial Deposition of Ronald Neadle, p. 63, attached as Exhibit "F" to attorney Dressler's Affidavit.*

34. Neadle observed the plaintiff come off the curb on his bicycle, fly over the handlebars of the bicycle, and impact the station wagon though defendant Neadle does not know if the bicycle actually ever impacted the station wagon. *See, Pretrial Deposition of Ronald Neadle, at pp. 62–64, attached as Exhibit "F" to attorney Dressler's Affidavit.*

35. The New York Vehicle and Traffic Law requires that bicycles be ridden near the *right* hand curb, edge, or shoulder of a roadway and not on sidewalks. *See, N.Y. v. & T Law § 1234(a).*

36. That same statute also requires that any person operating a bicycle who is entering a roadway over a curb shall come to a complete stop before doing so. *See, N.Y. v. & T Law § 1234(c).*

37. A local ordinance for the City of Schenectady similarly prohibits the riding of bicycles on public sidewalks. *See, City of Schenectady Code § 248–23, a copy of which is attached to defendant's Memorandum of law in the Appendix thereto.*

DATED:    March 23, 2000
Albany, New York.

_____

By: Christopher K.H. Dressler, Esq.
*Bar Role No: 101538*
**MAYNARD, O'CONNOR, SMITH, & CATALINOTTO**
Attorneys for Defendants
80 State Street
Albany, New York 12207
(518)465-3553

TO:    FINKELSTEIN,    LEVINE, GOTTLESOHN & PARTNERS
Attorneys for Plaintiff
436 Robinson Avenue
Newburgh, New York 12550