[837 NYS2d 160]

Frank Cunha, Appellant, v Blanche S. Shapiro, Individually and as Executrix of Jesse Shapiro, Deceased, et al., Respondents.

Second Department, May 1, 2007

APPEARANCES OF COUNSEL

*Ogen & Associates, P.C.*, New York City (*Eitan Alexander Ogen* of counsel), for appellant.

*Irwen C. Abrams* (*Boeggeman, George, Hodges & Corde, P.C.*, White Plains [*Cynthia Dolan*] of counsel), for respondents.

## OPINION OF THE COURT

DILLON, J.

We address two issues of first impression for this Court involving "high-low" agreements. The first issue is whether a high-low agreement, when triggered, is a voluntary settlement of an action or, alternatively, a mere stipulated modification of the jury's verdict. The second issue, if a high-low agreement constitutes a settlement, is whether the plaintiff must exchange a general release and stipulation of discontinuance to commence the defendant's 21-day payment period before the plaintiff may file a judgment with interest, costs, and disbursements under CPLR 5003-a. For reasons discussed below, we find that a high-low agreement that is reached between parties and which is otherwise enforceable constitutes a settlement of the parties' litigation. We also find that the high-low settlement must be treated like any other settlement for CPLR purposes, including application of the payment, judgment, and interest provisions of CPLR 5003-a, unless the provisions of the statute are expressly exempted from the stipulated terms of the high-low agreement.

### I. Relevant Facts and Prior Proceedings

The plaintiff, Frank Cunha, commenced this action against the defendants, Blanche S. Shapiro, individually, and Blanche S. Shapiro, as executrix of the estate of Jesse Shapiro, seeking to

recover damages for personal injuries allegedly sustained on April 23, 2003.[1] By order dated July 14, 2004, the Supreme Court granted the plaintiff's motion for summary judgment on the issue of liability. On March 30, 2006, after the jury was selected for the trial on damages, and prior to the presentation of any evidence, the parties placed a high-low agreement on the record in open court. The parties agreed that regardless of the jury verdict, the plaintiff would receive damages of not less than $75,000 nor more than $325,000, and that the jury verdict would control for any amount rendered between $75,000 and $325,000. The court specifically stated that "there will be no appeals or post-trial motions" and that "[t]he case will be settled based upon the jury [sic] verdict." The parties disputed on the record whether the terms of their high-low agreement included a waiver of statutory interest. The court addressed the issue of interest by directing, over the objection of the plaintiff's counsel, that interest was waived by the plaintiff if damages were paid by the defendants within the time prescribed by the CPLR.[2]

The jury returned its verdict on March 31, 2006. The jury awarded the plaintiff damages in the sums of $100,000 for past pain and suffering and $300,000 for future pain and suffering over 20 years for a total award of $400,000. The award triggered the parties' high-low agreement, which limited the damages award to $325,000.

Three to four weeks after the trial concluded, the defendants' counsel sought, in person and by telephone, a general release from the plaintiff's counsel. No general release was provided, as the plaintiff's counsel believed none was required since the terms of the high-low agreement did not call for one and as a release is not required upon a jury verdict. The damages were not paid. On May 12, 2006, the plaintiff filed a judgment executed by the clerk of the court in the principal sum of $325,000 plus interest in the amount of $46,800, costs of $700, and disbursements of $560, totaling $373,060.

The defendants responded to the judgment by moving, in an order to show cause dated June 19, 2006, pursuant to, in effect,

---

**1.** An additional plaintiff, Melissa Mahabadi, was named as a plaintiff in the complaint, settled her action for $7,500 prior to trial, and is outside the scope of this appeal.

**2.** The court identified the CPLR time frame for payment of damages as 30 days. The time frame for paying sums due a "settling plaintiff" is, in fact, 21 days (see CPLR 5003-a [a]), and was later correctly recognized by the trial court.

CPLR 5003-a, to vacate the judgment. They argued, in essence, that the parties' high-low agreement, as triggered here, was a "settlement" that displaced the jury verdict in its entirety. The defendants further argued that CPLR 5003-a, which requires payment of settlements within 21 days, measures the time frame for payment from the tender of a general release. They therefore opposed the inclusion in the judgment of $46,800 of interest plus costs and disbursements since, absent a general release, the judgment was premature and an award of interest was unauthorized.

The plaintiff opposed the motion to vacate the judgment, arguing that the exchange of a release was not a precondition of payment, and that the court had directed an award of interest if the damages were not paid within 30 days. The plaintiff also took issue with the defendants' description of the high-low agreement as a "settlement," arguing instead that no settlement exists where, as here, the jury rendered a verdict, albeit one reduced by stipulation.

In an order dated July 31, 2006, the Supreme Court (Schneier, J.) granted the motion to vacate the judgment, as it was entered without the plaintiff having first tendered a general release as required by CPLR 5003-a. By implication, the Supreme Court necessarily viewed the parties' high-low agreement as a settlement of the litigation, warranting application of the general release provisions of CPLR 5003-a.

We affirm.

## II. A High-Low Agreement, When Triggered, Constitutes a Settlement

New York has "long favored and encouraged the fashioning of stipulations as a means of expediting and simplifying the resolution of disputes" (*Mitchell v New York Hosp.*, 61 NY2d 208, 214 [1984]). In this regard, high-low agreements are generally favored by courts, attorneys, and litigants as they assure a minimally-acceptable recovery to plaintiffs in the event of an unexpectedly small verdict or a defense verdict, while protecting defendants against runaway verdicts (*see McDonnell v Tello,* 8 Misc 3d 1003[A], 2005 NY Slip Op 50913[U] [2005]).

A high-low agreement, when initially reached by the parties in a litigation, is, in fact, a conditional settlement. The condition of the agreement is that the jury render a verdict that falls outside the range of the high-low agreement. When a verdict is rendered outside of the agreed-upon range, the condi-

tion is triggered and the "high" or the "low" becomes binding upon the parties as a settlement. By contrast, when a jury renders a verdict within the range of the high-low agreement, the condition is not met and the high-low agreement is rendered academic.

The "settlement" of this action by the parties for the sum of $325,000 is evident in three respects. The first is grounded in how high-low agreements have been treated by relevant decisional authorities. No appellate court has specifically addressed the question of whether a high-low agreement constitutes a settlement and requires compliance with CPLR 5003-a. However, cases are legion wherein courts have treated high-low agreements as settlements, both incidentally or by reference (*see Gold v United Health Servs. Hosps.*, 95 NY2d 683 [2001] [high-low agreement repeatedly referenced as a settlement by Court of Appeals]; *Batista v Elite Ambulette Serv.*, 281 AD2d 196 [2001] [high-low agreement treated as settlement requiring release for a corrected "low" sum]; *Matter of Abraham XX.*, 36 AD3d 1085 [2007] [high-low agreement in medical malpractice action which triggered "high" treated as settlement]; *McComber v Lehrer McGovern Bovis, Inc.*, 28 AD3d 402 [2006] [high-low agreement treated as settlement in determining amount of lien and litigation costs]; *Vecchione v Amica Mut. Ins. Co.*, 274 AD2d 576 [2000] [insurer's offer of a high-low agreement, instead of full policy limits, is not evidence of a bad faith refusal to settle]; *Matter of New York Cent. Mut. Fire Ins. Co. v Farm Family Mut. Ins. Co.*, 231 AD2d 722 [1996] [high-low agreement in arbitration deemed to be the functional equivalent of a settlement as to permit further insurance arbitration to apportion respective liabilities]; *Torres v Livorno Rest. Corp.*, 221 AD2d 197 [1995] [high-low agreement described as settlement]; *McDonnell v Tello, supra* [damages settled by high-low agreement precluding the court's consideration of additur]; *Dion v Green*, 161 Misc 2d 341 [1994] [the agreed-upon "low" of a high-low agreement, triggered upon the results of arbitration, treated by the court as a settlement for the purpose of reviewing an infant's compromise]).

In stark contrast to the foregoing, no reported case provides that a high-low agreement, when triggered, is something other than a settlement.

The second reason the parties' high-low agreement represents a settlement involves the language that the parties spread on the record memorializing the agreement. The parties and the

court discussed the high-low agreement, in the event it was triggered, as a settlement of their dispute over the proper amount of damages. The Supreme Court stated that "[t]he case will be *settled* based on the jury verdict" (emphasis added; *see S.S. v New York City Health & Hosps. Corp. [Harlem Hosp.],* 11 Misc 3d 1071[A], 2006 NY Slip Op 50514[U] [2006]). Consistent with the concept of settlement, the court also stated that upon the settlement, there would "be no appeals or post-trial motions." No objection was voiced by counsel to the court's characterization of the parties' agreement as a settlement or to the waiver of the parties' right to file posttrial motions and appeals (*cf. Stern v Stern,* 304 AD2d 649, 649-650 [2003]; *Matter of Department of Social Servs. v Herbert R.,* 213 AD2d 636 [1995]).

The terms of the high-low agreement were expressed on the record by counsel in open court and are therefore valid and enforceable under CPLR 2104 (*see e.g. Sontag v Sontag,* 114 AD2d 892, 893 [1985]; *Blake v Blake,* 229 AD2d 509, 510 [1996]). The strict enforcement of open-court stipulations of settlement serves the interests of efficient dispute resolution, the management of court calendars, and the integrity of the litigation process (*see Hallock v State of New York,* 64 NY2d 224, 230 [1984]). While stipulations of settlement may be vacated where there is sufficient cause to set aside a contract, such as in instances of fraud, collusion, mistake, or accident (*see Hallock v State of New York, supra* at 230; *Ogu v Faulkner,* 265 AD2d 469 [1999]), no party seeks here to set aside the high-low agreement on any such grounds, as their dispute instead focuses on whether the terms agreed upon constitute a settlement, and whether interest was to accrue if payment of damages was not made on behalf of the defendants within 30 days.

The third reason that a high-low agreement should be viewed as a settlement is that such an agreement is consistent with our understanding of what settlements are designed to accomplish. Here, the parties disputed the amount of damages to which the plaintiff was entitled and proceeded to trial, but agreed that the plaintiff would be entitled to a $75,000 "low" and a $325,000 "high" in the event the jury's verdict fell outside of the range of the high-low agreement. When the jury verdict awarded the plaintiff compensatory damages totaling $400,000, the jury verdict was supplanted by the parties' agreement that damages be paid in the sum of $325,000 instead. The $325,000 award was not determined by the jurors, but rather, by the parties themselves. Authority as basic as Black's Law Dictionary defines

a "settlement" as, inter alia, "an agreement by which parties having disputed matters between them reach or ascertain what is coming from one to the other" (see Black's Law Dictionary 1231 [5th ed 1979]). Here, the parties reached an agreement on the minimum and maximum amount of damages that would be paid to the plaintiff, independent of the compensatory amount actually determined by the jury. The $325,000 "high" to which the parties agreed is therefore consistent with the concept of settling disputes and should be treated by the courts accordingly.

### III. The Applicability of CPLR 5003-a

CPLR 5003-a (a) provides that "[w]hen an action to recover damages has been settled, any settling defendant . . . shall pay all sums due to any settling plaintiff within twenty-one days of tender, by the settling plaintiff . . . of a duly executed release and a stipulation discontinuing [the] action." CPLR 5003-a became effective on July 1, 1992, and was enacted to encourage the prompt payment of damages in settled actions (see O'Meara v A & P, Inc., 169 Misc 2d 697, 699 [1996], citing Siegel, Supp Practice Commentaries, McKinneys Cons Laws of NY, Book 7B, CPLR 5003-a, 1996 Pocket Part, at 48, and Siegel, NY Prac § 411, at 74 [2d ed 1995 Pocket Part]; O'Reilly v State of New York, 164 Misc 2d 477, 478 [1995]). To encourage the prompt payment of settlements, CPLR 5003-a (e) authorizes the settling plaintiff to enter, without further notice, a judgment against a settling defendant that "fails to promptly pay all sums as required by subdivisions (a), (b), and (c) of this section [CPLR 5003-a]." That judgment is to include interest (see Mann v All Waste Sys., 293 AD2d 656 [2002]; Errico v Davidoff, 178 Misc 2d 378, 383-384 [1998]), plus statutory costs and disbursements (see Errico v Davidoff, supra at 384; O'Meara v A & P, Inc., supra at 700). Significantly, interest under such circumstances is measured from the tender of the release and stipulation of discontinuance (see CPLR 5003-a [e]; O'Meara v A & P, Inc., supra at 699). A "tender" is separately defined by CPLR 5003-a (g) as the personal delivery or mailing, by registered or certified mail, of the release and stipulation.[3]

In the context of settlements generally, it has been held that interest pursuant to CPLR 5003-a is not awardable in judg-

---

**3.** Where mailing is utilized, "tender" is defined as occurring upon the defendant's actual receipt of the general release and stipulation of discontinu-

ments in three instances. The first is when a judgment is filed prematurely, before the passage of 21 days from the tender of the settlement papers (*see* CPLR 5003-a [a]; *Ansbach v Gorson,* 2 AD3d 471, 472 [2003]; *Johnson v Karavassilis,* 2 Misc 3d 341, 342 [2003]; *O'Meara v A & P, Inc., supra* at 698). The second is when the release exchanged by the plaintiff reflects an inaccurate settlement sum (*see Batista v Elite Ambulette Serv., supra* at 197; *Liss v Brigham Park Coop. Apts. Sec. No. 3,* 264 AD2d 717, 718 [1999]). The third instance where interest cannot be awarded on a settlement, applicable here, is where the settling plaintiff fails to tender a general release and stipulation of discontinuance at all (*see Ribacoff v Chubb Group of Ins. Cos.,* 2 AD3d 153, 155 [2003]).

The appellate decision that is the closest to providing guidance on the applicability of CPLR 5003-a to high-low agreements is *Batista v Elite Ambulette Serv.* (281 AD2d 196 [2001], *supra*). In *Batista,* the parties had entered into a high-low agreement that the plaintiff not receive damages of more than $900,000 nor less than $150,000. The jury awarded the plaintiff preapportionment damages in the sum of $225,000, within the range of the high-low agreement, and apportioned fault 75% against the plaintiff and 25% against the defendant. The terms of the high-low agreement were silent as to how comparative negligence would be treated. The plaintiff contended that he was entitled to $225,000 since the preapportionment amount of the verdict fell within the agreed-upon range. The defendant argued that he was entitled to only $150,000 under the agreement upon factoring in comparative negligence, because after apportionment of fault, the jury's award was only $56,250. In determining that the plaintiff was entitled to $150,000, the First Department rejected the plaintiff's argument that the preapportionment amount of $225,000 should apply. The First Department reasoned that as the plaintiff's fault was a substantial component of the verdict, and as the stipulation placed on the record did not contain any language waiving the issue of comparative negligence, it was proper to utilize the postapportionment figure in determining what the plaintiff was entitled to under the high-low agreement, i.e., the "low" of $150,000. Interestingly, the First Department found that the plaintiff was not entitled to interest and costs under CPLR

ance, and not on the date of mailing (*see Johnson v Karavassilis,* 2 Misc 3d 341, 342 [2003]; *O'Meara v A & P, Inc., supra* at 698).

5003-a since he failed to correct the "settlement amount" on the release from $225,000 to $150,000, despite the defendant's requests to do so. Consequently, in *Batista,* the First Department treated the parties' high-low agreement as a settlement and applied CPLR 5003-a to the required procedures for filing a proper judgment.

■ The plaintiff argues that CPLR 5003-a does not apply to his high-low agreement, as the parties did not expressly include CPLR 5003-a within the terms that were spread on the record in open court on March 30, 2006. However, contrary to the plaintiff's contention, the settlement of the parties' action by means of their high-low agreement automatically invokes all relevant provisions of the CPLR, including CPLR 5003-a (*see* CPLR 101 [CPLR "shall" govern the procedure in civil judicial proceedings]). The parties were the masters of their high-low agreement and could have expressly exempted the provisions of CPLR 5003-a had they chosen to do so (*accord Batista v Elite Ambulette Serv., supra* at 197 [failure of high-low agreement to exempt comparative negligence from its terms does not remove comparative negligence from calculating the damages "low"]). Instead, the court, in accepting the high-low agreement, in essence invoked CPLR 5003-a by directing that interest be awarded to the plaintiff only in the event that damages were not paid within the time frame dictated by the CPLR.

The plaintiff also relies upon *Malaspina v Victory Mem. Hosp.* (29 AD3d 646 [2006]) in support of his argument that a settlement on damages does not require the exchange of a general release. *Malaspina* is readily distinguishable. In *Malaspina,* this Court granted a new trial on the issue of damages for past pain and suffering in a medical malpractice action, unless the parties stipulated to increase such damages from the sum of $20,000 to the sum of $150,000. The case did not involve issues regarding general releases or stipulations of discontinuance under CPLR 5003-a.

To the extent that the plaintiff's brief could be construed to argue that no purpose is served by requiring parties to exchange settlement papers pursuant to CPLR 5003-a when a high-low agreement governs damages, we disagree. There is, in fact, utility to the exchange of a general release and stipulation of discontinuance. The general release finally and forever concludes the plaintiff's claims against the defendant and, as noted, serves the purpose of establishing, upon ten-

der, the date from which interest is measured in any judgment that follows (see CPLR 5003-a [e]). The stipulation of discontinuance, also required by CPLR 5003-a, closes the parties' litigation and, as applicable here, implements the parties' agreement that there be no posttrial motions or appeals (see Newman v Newman, 245 AD2d 353, 354 [1997]; Weldotron Corp. v Arbee Scales, 161 AD2d 708, 709 [1990]).

By this opinion, we do not suggest that every high-low agreement requires the exchange of closing papers under CPLR 5003-a. Parties entering into high-low agreements are free to craft the terms of their agreements on the record in any manner that is mutually acceptable to them, including exempting from or limiting the applicability of the provisions of CPLR 5003-a should the parties so choose. Moreover, there are, no doubt, many instances where, after a high-low agreement is triggered, damages are paid by defendants in the absence of closing papers under CPLR 5003-a, rendering issues of interest, costs, and disbursements academic. However, absent an expressed exemption in the high-low stipulation, CPLR 5003-a applies to high-low agreements in the same manner as it does to any other settlement. Plaintiffs who wish to avail themselves of the enforcement mechanism of CPLR 5003-a to collect settlement money that becomes due as a result of a high-low agreement must adhere to the requirements of the statute, including its 21-day waiting period and the tender of a general release and a stipulation of discontinuance.

Since we find the high-low agreement spread on the record in open court to be a settlement of the parties' dispute on the proper amount of damages to be awarded to the plaintiff, we find the provisions of CPLR 5003-a applicable to the $325,000 "high" that was triggered as a result of the jury's verdict. By virtue of CPLR 5003-a, which was not exempted by the parties from the terms of their negotiated high-low agreement in the normal course, the plaintiff was required to tender a general release and a stipulation of discontinuance to the defendants and then wait 21 days before a judgment could be properly filed with the clerk of the court (see Ribacoff v Chubb Group of Ins. Cos., supra at 155; see also Batista v Elite Ambulette Serv., supra at 197; Liss v Brigham Park Coop. Apts. Sec. No. 3, supra at 718). The plaintiff failed to abide by the requirements of CPLR 5003-a, despite the repeated requests of the defendants' counsel. The Supreme Court therefore

properly vacated the judgment that had been filed by the plaintiff, including its award of interest, costs, and disbursements. Accordingly, we affirm the order.

PRUDENTI, P.J., KRAUSMAN and McCARTHY, JJ., concur.

Ordered that the order is affirmed, with costs.