OPINION OF THE COURT
Jack M. Battaglia, J.
At the beginning of the liability phase of this bifurcated negligence action, plaintiff Irina Doubrovinskaya and defendant Naftali Z. Dembitzer agreed on the record (see CPLR 2104) that the jury’s verdict on liability would resolve the entire action. As will be described more specifically, plaintiff would have received as damages for her injuries an amount determined by the “percentage point of liability found against the defendant,” with a “minimum of $25,000, a maximum of $100,000.”
On February 13, 2008, the jury returned a verdict in which it answered in the affirmative to the question, “Was defendant Naftali Z. Dembitzer negligent,” and in the negative to the question, “Was the negligence of defendant Naftali Z. Dembitzer a substantial factor in bringing about the accident.” Plaintiff moves to set aside the verdict as contrary to the weight of the evidence. (See CPLR 4404 [a].) Defendant insists that the court “has no power to set aside this verdict” (see affirmation *442 in opposition ¶ 9), having been “stripped of all power affecting a jury determination to which the parties are bound” (id. 1i 29), by reason of the agreement as to damages placed on the record at trial.
That agreement, placed on the record by defendant’s counsel, is:
“It is hereby stipulated and agreed by and between the parties and by the attorneys of record for the parties that the full value of all claims arising out of the accident of January 24, 2006 will be governed by a $100,000 to $25,000 high-low agreement. The plaintiff will receive a minimum of $25,000, a maximum of $100,000. Plaintiff will receive $2500 per each percentage point of liability found against the defendant.
“For example, defendant 100 percent at fault, plaintiff will receive $100,000.
“Defendant 25 percent at fault, plaintiff will receive $62,500.
“If the jury determines that the defendant is zero percent at fault, the plaintiff will still receive $25,000.
“The amount to be paid includes all costs, interests and disbursements if any.
“Neither side will enter judgment. Plaintiff will provide a stipulation of discontinuance and a release. The attorneys for the parties acknowledge that they have the authority of their respective clients to enter into this stipulation.”
Subsequently, in allocating the agreement with plaintiff, her counsel characterized the “understanding . . . reached with the defendant in this case”: “you would receive [at] the most $100,000, and the least, $25,000 . . . you would get $2500 for each percent of negligence against the defendant up to the maximum of 100,000 [sic] or the minimum of $25,000.” No objection was made to counsel’s characterization of the agreement.
The dispute on this motion, in the first instance, is whether plaintiff may make it at all. There was no express agreement that there would be no posttrial motions, nor an express agreement as to the consequence if the jury’s verdict neither specified a “percent of negligence” nor established that defendant was “zero percent at fault.” Even if “at fault” is *443 understood as encompassing both lack of reasonable care and proximate cause, the jury only specified that defendant’s lack of care was not a “substantial factor” in bringing about the accident, not that its contribution was “zero.”
Neither party contends that the settlement agreement was not an agreement at all, and therefore unenforceable, because it lacks a material term; nor does either party contend that a condition necessary to the enforceability of the agreement— namely, a verdict that either established that defendant was “zero percent at fault” or that specified a “percent of negligence” — did not occur. (See e.g. Joseph v City of New York, 15 Misc 3d 1136[A], 2007 NY Slip Op 51008[U] [Sup Ct, Kings County 2007].)
“A stipulation of settlement is a contract, enforceable according to its terms” (see McKenzie v Vintage Hallmark, 302 AD2d 503, 504 [2d Dept 2003]), and “subject to principles of contract construction” (see Hotel Cameron, Inc. v Purcell, 35 AD3d 153, 155 [1st Dept 2006]). “Where ... a party seeks to enforce the terms of [a] stipulation [of settlement], a court must effectuate the parties’ intent”; “[w]here the stipulation’s terms are unambiguous, the parties’ intent must be gleaned from the plain meaning of the words used by the parties.” (Vider v Vider, 46 AD3d 673, 674 [2d Dept 2007].)
Here, the question is whether the “plain meaning of the words used by the parties” (id.) when their agreement was placed on the record evinced an intent, as defendant would have it, that no postverdict motion would be made. If they do not, then the court must consider other available evidence of the parties’ intent as to the making of postverdict motions. Neither party contends that the availability of postverdict motions was discussed.
“A high-low agreement is a tool commonly used in litigation that guarantees the plaintiff a minimal recovery while concomitantly capping a defendant’s potential exposure.” (Matter of Eighth Jud. Dist. Asbestos Litig., 8 NY3d 717, 721 [2007].) “[H]igh-low agreements are generally favored by courts, attorneys, and litigants as they assure a minimally-acceptable recovery to plaintiffs in the event of an unexpectedly small verdict or a defense verdict, while protecting defendants against runaway verdicts.” (Cunha v Shapiro, 42 AD3d 95, 98 [2d Dept 2007].) “Parties entering into high-low agreements are free to craft the terms of their agreement on the record in any manner that is mutually acceptable to them.” (Id. at 104.)
*444 Had the parties here stated that there would be no posttrial motions or appeals (see id. at 99-100), that would be the end of it. Nor would a posttrial motion or appeal be entertained if, in the absence of express agreement, the record were clear that such was the parties’ intent. (See Ogu v Faulkner, 265 AD2d 469, 469 [2d Dept 1999]; see also Esposito v Wilson, 308 AD2d 432, 432 [2d Dept 2003].) A court might even imply such an intent if it were “universally understood” to be part of a high-low agreement. (See Torres v Livorno Rest. Corp., 221 AD2d 197, 197 [1st Dept 1995].)
Defendant does not contend, nor make a showing, that preclusion of a posttrial motion would be “universally understood” as part of a high-low agreement of the kind made here. It may be that, where the high-low agreement specifies the minimum and maximum amount of damages, with the jury asked to specify an amount, a jury verdict as to the amount is exactly what the parties bargained for, and it would be “universally understood” that the agreement would preclude a posttrial motion seeking an amount higher or lower than the amount dictated by the jury’s award. (See Kalkan v University of Rochester, 15 Misc 3d 1139[A], 2007 NY Slip Op 51057[U] [Sup Ct, Monroe County 2007]; McDonnell v Tello, 8 Misc 3d 1003[A], 2005 NY Slip Op 50913[U] [Sup Ct, Westchester County 2005].) But this is not that kind of high-low agreement.
Here, the only evidence in the record as to the parties’ intent as to posttrial motions comes from defendant, and it points in the direction opposite to that defendant would have the court take on this motion. First, defendant moved for a directed verdict of no liability, clearly indicating his understanding that the parties’ agreement did not preclude motions on which the court would weigh the sufficiency of the evidence. Perhaps more significant, after the jury’s verdict and plaintiffs motion to set it aside, the court asked defense counsel at least three times whether defendant contended that the court could not entertain the motion because of the parties’ agreement. When counsel eventually gave a clear response, it was in the negative. Only later, in a letter addressed to plaintiffs counsel, with a copy to the court, did defendant take the position that he now argues as if it were indisputable and self-evident.
The court intends no criticism of defense counsel. The pressures of trial might well interfere with full consideration and articulation of the terms of a settlement agreement. Plaintiffs counsel did not make clear that a posttrial motion would be *445 permitted, assuming the question came to mind, and the court did not raise it. Of course, if agreements as to settlement were made before a selected jury entered the box, time and conditions would be better suited to crafting and expressing a clear and comprehensive agreement. In addition to posttrial motions addressed to the sufficiency of the evidence, the agreement might preclude or permit posttrial motions upon evidentiary objections or other grounds addressed to the “interest of justice” (see CPLR 4404 [a]).
Although defendant will not be deemed to have waived his objection to court consideration of plaintiffs motion by reason of either his moving for a directed verdict or his concession at trial after plaintiffs motion was made, in the absence of an express term one way or the other, the court must interpret the agreement the way the parties understood it, and defendant has provided the best evidence of that.
The court rejects, therefore, defendant’s contention that the agreement of the parties precludes consideration of plaintiffs postverdict motion.
Defendant contends, relying upon Grzesiak v General Elec. Co. (68 NY2d 937 [1986]) and Barry v Manglass (55 NY2d 803 [1981]), that plaintiff has, in any event, waived her objection to the jury’s verdict because she did not make it before the jury was discharged. The rule defendant cites is one directed to the preservation of the issue for appellate review (see Grzesiak v General Elec. Co., 68 NY2d at 939; Smith v Sheehy, 45 AD3d 670, 671 [2d Dept 2007]; Grassi v Kamalian, 226 AD2d 344, 344 [2d Dept 1996]). Its purpose is to allow the trial court to consider corrective action while the opportunity still exists (see Barry v Manglass, 55 NY2d at 806; Grassi v Kamalian, 226 AD2d at 344).
But at least here, “[t]here is no merit to defendant’s argument that plaintiffs failure to move for reconsideration of the verdict conclusively waived [her] right to seek a new trial.” (See Vera v Bielomatik Corp., 199 AD2d 132, 133 [1st Dept 1993]; see also Smith v Sheehy, 45 AD3d at 671; Califano v Automotive Rentals, 293 AD2d 436, 437 [2d Dept 2002]; but see Sims v Comprehensive Community Dev. Corp., 40 AD3d 256, 258 [1st Dept 2007].) Arguable inconsistency in the jury’s verdict was immediately apparent, and no one suggested that the jury be re-instructed and asked to reconsider. “When a jury’s verdict is internally inconsistent, the trial court must direct either reconsideration by the jury or a new trial.” (See Palmer v *446 Walters, 29 AD3d 552, 553 [2d Dept 2006].) Since defendant insists that there is no inconsistency, he would undoubtedly have resisted reconsideration by the jury then, as strenuously as he resists a new trial now.
The facts are not complex. Indeed, it might be fair to say, as defendant does, that “[t]here was no conflict in the testimony of the two operators”; “[t]here were no credibility issues.” (Affirmation in opposition 1Í 27.) To the extent, therefore, that a jury’s verdict has greater currency where the jury must resolve conflicts in the testimony and assess credibility, the jury’s verdict here does not benefit.
On the morning of January 24, 2006, plaintiff and defendant were each proceeding northbound in the right lane for moving traffic on Ocean Avenue in Brooklyn. Plaintiff was riding a bicycle; defendant was driving his car; plaintiff was ahead of defendant. At the intersection of Ocean Avenue and Avenue B the roadway had been opened, and the right lane and part of the left lane of Ocean Avenue as they traversed the intersection were covered by metal plates; construction equipment and material at the right curb precluded circumventing the plates on the right.
As plaintiff approached the intersection, she moved from the right lane into the portion of the left lane that was not covered by the plates. Defendant proceeded through the intersection in the right lane. Behind plaintiff in the left lane was another car, and that driver sounded its horn. Plaintiff then moved her bicycle from the left lane into the right lane, where it struck the driver’s side of defendant’s car.
There is no dispute that plaintiff did not signal by hand that she was changing lanes, as she was required to do by law. (See Vehicle and Traffic Law §§ 1163, 1164; People v Rice, 44 AD3d 247, 250-254 [1st Dept 2007]; Blitstein v Capital Dist. Transp. Auth., 81 AD2d 981, 981 [3d Dept 1981].) Nor is there any dispute that defendant failed to sound his horn, as he was required to do by law “when necessary.” (See Vehicle and Traffic Law § 1146.) Defendant testified that he was aware that plaintiff had moved from the right lane to the left in order to avoid the metal plates, but his testimony was somewhat inconsistent as to whether he was aware that she would be moving back to the right lane from the left once she passed the metal plates.
The court instructed the jury in accordance with the Pattern Jury Instructions as to negligence and foreseeability generally *447 (PJI 2:10, 2:12); as to the general duty owed by a motorist to a bicyclist, and by a bicyclist for her own safety (PJI 2:76A); and as to the statutory standard of care (PJI 2:26) that defendant owed plaintiff under Vehicle and Traffic Law § 1146, and that plaintiff owed defendant under Vehicle and Traffic Law §§ 1128, 1163, and 1237. The court also instructed the jury as to burden of proof (PJI 1:60), comparative fault (PJI 2:36), and proximate cause (PJI 2:70).
The jury verdict sheet also followed that found in the Pattern Jury Instructions (NY PJI 2:36, Special Verdict Form SV-II). The instructions and verdict sheet required that the jury first answer as to whether defendant was negligent, and, if so, whether his negligence was a substantial factor in bringing about the accident. If both questions were answered in the affirmative, the jury was then required to answer as to whether plaintiff was negligent, and, if so, whether her negligence was a substantial factor in bringing about the accident. Only if the jury answered both questions in the affirmative would an allocation of fault be made as between plaintiff and defendant.
The court notes that the instructions and verdict sheet found in the Pattern Jury Instructions do not expressly recognize the possibility that a plaintiff’s negligence might be the sole proximate cause of an accident; indeed, the jury does not consider the plaintiffs negligence until after it has determined whether the defendant’s negligence was a proximate cause. Further complication is added by the instruction that a plaintiff bears the burden of proving by a preponderance of the evidence that the defendant’s negligence was a substantial factor in bringing about the accident, but that the defendant bears the burden of proving by a preponderance of the evidence that the plaintiffs negligence was a substantial factor in bringing about the accident. (See PJI 1:60.)
In what may be the only opinion to address this anomaly, the Second Department held that, notwithstanding that the trial court “submitted written interrogatories to the jury separately inquiring as to negligence and proximate cause with regard to the [defendant] and the injured plaintiff,” the appellate court could “properly consider the injured plaintiffs actions, not on the issue of comparative negligence, but on the totality of the proof in the jury’s evaluation of the issue of proximate cause,” and determine that “the jury could reasonably have concluded that . . . the sole proximate cause of this accident was the conduct of the injured plaintiff.” (See Rubin v Pecoraro, 141 AD2d 525, 526-527 [2d Dept 1988].)
*448 In finding that defendant was negligent, the jury must have found that he was aware or should have been aware that plaintiff would be moving back into the right lane of traffic after she passed the metal plates while traveling in the left lane, and that he failed to use due care by proceeding past her in the right lane, or by failing to sound his horn, or both. Despite defendant’s contention now that it was not foreseeable that plaintiff would return to the right lane after passing the plates (affirmation in opposition If11 29, 34), the jury obviously disagreed, and that finding was clearly supported by the evidence and the weight of the evidence.
In finding that defendant’s negligence was not a substantial factor in bringing about the accident, the jury must have found that plaintiff’s negligence was, in effect, the sole proximate cause of the accident — that is, that the plaintiffs negligence was the only substantial factor in bringing about the accident. And so defendant contends on this motion. {Id. 11 33.) It is important to note that neither party argued to the jury that the sounding of the horn by the second motorist, preceding plaintiffs moving from the left lane to the right, was either negligent or a substantial factor in bringing about the accident. Again, on the question whether plaintiff’s negligence was a substantial factor in bringing about the accident, and necessarily whether it was the only substantial factor, defendant bore the burden of persuasion.
“A jury verdict should not be set aside as against the weight of the evidence unless the jury could not have reached the verdict by any fair interpretation of the evidence.” (Jones v Radeker, 32 AD3d 494, 495 [2d Dept 2006].)
“A jury’s finding that a party was at fault but that such fault was not a proximate cause of the accident is inconsistent and against the weight of the evidence only when the issues are so inextricably interwoven as to make it logically impossible to find negligence without also finding proximate cause.” (Id., quoting Garrett v Manaser, 8 AD3d 616, 617 [2d Dept 2004].)
“Where the verdict can be reconciled with a reasonable view of the evidence, the successful party is entitled to the presumption that the jury adopted that view.” (Zito v City of New York, 49 AD3d 872, 874 [2d Dept 2008].)
Violation of a provision of the Vehicle and Traffic Law “constitutes negligence per se . . . but does not necessarily lead to *449 the conclusion that [the defendant’s] action was a proximate cause of the accident”; “the defendant may be totally at fault, not at all at fault, or partially at fault.” (Burghardt v Cmaylo, 40 AD3d 568, 569 [2d Dept 2007]; see also Chen v Century Motor Leasing, Inc., 51 AD3d 618 [2d Dept 2008]; Forman v McFadden, 44 AD3d 523, 523-524 [1st Dept 2007]; Farino v Cassiere, 260 AD2d 534, 534 [2d Dept 1999]; Cranston v Oxford Resources Corp., 173 AD2d 757, 758-759 [2d Dept 1991].)
Nonetheless, appellate courts have held that a jury’s finding of negligence without a finding of proximate cause is inconsistent and against the weight of the evidence when the negligence inheres in conduct that violates the Vehicle and Traffic Law. (See e.g. Ahr v Karolewski, 32 AD3d 805, 806 [2d Dept 2006]; Jones v Radeker, 32 AD3d at 495-496; Lallemand v Cook, 23 AD3d 533, 534 [2d Dept 2005]; Garrett v Manaser, 8 AD3d at 617; Misa v Filancia, 2 AD3d 810, 811 [2d Dept 2003].)
The opinions do not articulate any test or methodology for determining when the questions of negligence and proximate cause are “inextricably interwoven,” but the condition must exist where the two concepts overlap, and that is at foreseeability. “The risk reasonably to be perceived defines the duty to be obeyed.” (Palsgraf v Long Is. R.R. Co., 248 NY 339, 344 [1928].) “The scope of [the] duty of care varies with the foreseeability of the possible harm.” (Tagle v Jakob, 97 NY2d 165, 168 [2001]; see also Demshick v Community Hous. Mgt. Corp., 34 AD3d 518, 520 [2d Dept 2006] [“Foreseeability . . . determines the scope of the duty once a duty is found to exist”].) “Although the precise manner in which the harm occurred need not be foreseeable, liability does not attach unless the harm is within the reasonably foreseeable hazards that the duty exists to prevent.” (Sanchez v State of New York, 99 NY2d 247, 252 [2002].)
Foreseeability is also a lynchpin of proximate cause, particularly where it is alleged that the act of someone other than the defendant severs the causal connection between the defendant’s negligence and the harm suffered by the plaintiff. “[L]iability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant’s negligence.” (Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315 [1980].) “An intervening act may not serve as a superseding cause, and relieve an actor of responsibility, where the risk of the intervening act occurring is the very same risk which renders the actor negligent.” (Id. at 316.)
*450 These principles apply when it is the plaintiffs own conduct that is alleged to be the sole or superseding cause of the harm suffered. (See Butler v Seitelman, 90 NY2d 987, 989 [1997]; Denkensohn v Davenport, 75 NY2d 25, 36-37 [1989]; Boltax v Joy Day Camp, 67 NY2d 617, 619 [1986].) “[W]hat reasonable care requires . . . may both be determined by and be determinative of the question as to whether the activity of an injured [person] was an intervening cause of an accident. Foreseeability bears on both issues.” (See Quinlan v Cecchini, 41 NY2d 686, 691 [1977].)
Where negligence flows from violation of a statute, including a traffic law, proximate cause is found when the event that occurred is “an event of the kind intended to be avoided by [the] . . . statutory prohibition.” (See Dowling v Consolidated Carriers Corp., 103 AD2d 675, 676 [1st Dept 1984], affd 65 NY2d 799 [1985]; see also Guaspari v Gorsky, 36 AD2d 225, 228-229 [4th Dept 1971]; Hyde v McCreery, 145 App Div 729, 731 [3d Dept 1911] [“the statute was designed to prevent such injuries as were suffered by the individual claiming the damage”].)
As already noted, the jury here must have found that defendant failed to use due care by proceeding to pass plaintiff, or failing to sound his horn, or both, even though he was aware or should have been aware that she would be moving back into his lane after she passed the obstacle in the roadway. The Vehicle and Traffic Law provides that “every driver of a vehicle shall exercise due care to avoid colliding with any bicyclist, . . . and shall give warning by sounding the horn when necessary.” (See Vehicle and Traffic Law § 1146.) “[N]ot every driver who comes upon a bicyclist must sound a horn. Whether it is negligent to fail to employ a warning via a horn must be considered in light of the relevant circumstances.” (Ryder v County of Fulton, 303 AD2d 847, 849 [3d Dept 2003]; see also Bachman v Cook, 281 AD2d 938, 939 [4th Dept 2001].) Moreover, the failure of a motorist to sound the horn, even if negligent, may not be the proximate cause of a collision with a bicyclist. (See Baynes v American Red Cross, 111 F Supp 2d 127, 130 [ND NY 2000].)
The reason for sounding a horn (or, rather, the legitimate reason) is to make one’s presence known, in this case, to the bicyclist, and the risk addressed by the statutory requirement that the horn be sounded “when necessary” is that the bicyclist might enter the motorist’s path of travel. That is exactly what happened here, and might have been avoided, had defendant sounded his horn, which he admittedly did not. He argues that, *451 “[i]n the split second in which this accident occurred, it would have made no difference if [he] had sounded his horn.” (Affirmation in opposition 1117.) But that would only be so if he had waited until he was upon plaintiff before sounding his horn. If, as the jury may have found, he should have sounded his horn, he should have sounded it sooner than that.
Similarly, if the jury’s finding of negligence was based on defendant’s proceeding past plaintiff, it must have been because he was aware or should have been aware that she would be moving back into his path of travel in the right lane. It was clearly foreseeable under these circumstances that plaintiff would collide with defendant in the right lane, as she did. Defendant’s contention that “[p]laintiff simply struck defendant’s vehicle with her bicycle wheel and the actions of the two parties are totally separable” (id. ¶ 31) does not comport with the jury’s assessment of defendant’s conduct.
It may be that enough has been said to require that plaintiff’s motion be granted. But consideration of plaintiffs conduct is at least appropriate, given that the evidence establishes her own clear negligence. Again, it was defendant’s burden to show that plaintiffs negligence was the sole proximate cause of the accident. Plaintiff failed to signal by hand before changing lanes, although she was required to signal by the Vehicle and Traffic Law (see Vehicle and Traffic Law §§ 1163, 1164), and she gave no explanation other than that she did not know that she was so required. The risk addressed by the statutory requirement that a signal be given is that of a collision with a motorist, bicyclist, or pedestrian in the other lane. That is exactly what happened here, and might have been avoided, if plaintiff had given the signal, which she admittedly did not. A jury could find, therefore, that her conduct was a substantial factor in bringing about the accident.
But a signal becomes less important to the extent that the intended movement is already known. Since the jury’s finding as to defendant’s negligence must have been based upon a finding that he knew or should have known that she would be moving back into the right lane, a conclusion by the jury that plaintiffs failure to signal was the sole proximate cause of the collision, if that is what the jury concluded, would be against the weight of the evidence.
Finally, it might well be that a jury could conclude on the evidence presented that plaintiff was negligent in not looking more carefully before changing lanes, and that her negligence in this *452 respect was a substantial factor in bringing about the accident. Unlike the failure to signal, however, which would require a finding of negligence and proximate cause, we cannot know from the verdict sheet whether the jury reached any conclusion as to plaintiffs care in seeing what there was to be seen.
In any event, given the jury’s finding of defendant’s negligence, and the risk created and foreseeable consequences, a finding that plaintiffs negligence in failing to look carefully was the sole proximate cause of the collision would also be against the weight of the evidence. The protection for bicyclists that is mandated by the statutory requirement that a motorist sound the horn is protection given as well, if not particularly, to the bicyclist who does not look carefully. Likewise, if defendant was deemed negligent because he passed plaintiff before she moved back into the right lane, it was foreseeable that she might move into the lane without awareness of his presence.
Plaintiffs motion for a new trial is granted. The parties shall appear for jury selection in the Jury Coordinating Part on June 30, 2008, or on such other date on which they might agree in a signed stipulation “so ordered” by the court.