**Dismissed and Memorandum Opinion filed July 16, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00225-CV

---

**NAVIDEA BIOPHARMACEUTICALS, INC. AND MACROPHAGE THERAPEUTICS, INC., Appellants**

**V.**

**CAPITAL ROYALTY PARTNERS II, L.P., CAPITAL ROYALTY PARTNERS II - PARALLEL FUND "A", L.P., CAPITAL ROYALTY PARTNERS II (CAYMAN) L.P., AND CAPITAL ROYALTY PARTNERS II - PARALLEL FUND "B" (CAYMAN) L.P., Appellees**

---

**On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 2016-22242**

---

## MEMORANDUM OPINION

This case involves a commercial loan dispute resolved by a high-low settlement agreement and a trial to the court. After several days of trial, the court found that the borrowers owed the lenders an amount in excess of the maximum recovery permitted by the settlement agreement. The court signed a judgment in

favor of the lenders for the maximum allowed minus an amount the borrowers had agreed to pay under the settlement agreement. On appeal, the borrowers contend that the evidence is legally and factually insufficient to support the judgment. Because we conclude that appellants agreed to waive their right to appeal and do not assert a valid basis to invalidate the waiver, we dismiss the appeal.

## BACKGROUND

Consistent with the parties' briefing in the trial court and on appeal, we refer to appellants as Navidea and appellees as CRG.[1] We discuss only those matters necessary to advise the parties of the court's decision and the basic reasons for it. Tex. R. App. 47.4.

Navidea entered into a loan agreement and related documents with CRG. In accordance with the terms of the loan documents, CRG initially loaned $50 million to Navidea. One year later, on April 7, 2016, CRG filed suit against Navidea asserting that Navidea had committed several events of default under the loan agreement. CRG initially sought a declaratory judgment and damages for breach of contract. Shortly after that, CRG exercised its contractual right under the loan documents to require U.S. Bank to transfer funds from a certain Navidea account to CRG. U.S. Bank provided CRG $4,112,434.17 from the account. The parties refer to the roughly $4.1 million that CRG received from U.S. Bank as the "swept funds."

The scope of the litigation quickly escalated to involve proceedings between CRG and Navidea in Texas and Ohio. Eventually, however, Navidea and CRG

---

[1] "Navidea" collectively refers to Navidea Biopharmaceuticals, Inc. and Macrophage Therapeutics, Inc. "CRG" collectively refers to Capital Royalty Partners II, L.P., Capital Royalty Partners II – Parallel Fund "A", L.P., Parallel Investment Opportunities Partners II, L.P., Capital Royalty Partners II (Cayman) L.P., and Capital Royalty Partners II – Parallel Fund "B" (Cayman) L.P.

agreed to settle their disputes. In February 2017, the parties stipulated to the terms of a settlement in open court during a proceeding in an Ohio court of common pleas. Among other things, Navidea agreed to pay CRG $59 million and CRG agreed to allow Navidea to sell certain of its assets to a third party. Navidea also agreed to withdraw its counterclaims in the Texas suit and to not assert such (or similar) counterclaims in the future in the Texas suit.

The parties reduced their settlement to writing in a document titled "Global Settlement Agreement." Under the settlement agreement, CRG and Navidea would litigate CRG's claims and Navidea's defenses in the Texas suit subject to a high-low agreement. The settlement agreement also provided that the Texas court's decision would be "final and non-appealable." In relevant part, the settlement agreement provided:

> The Texas Court shall adjudicate the Texas Claims to determine the final amount of the Obligations owed by the Company to the Lenders under the Loan Documents (the "Final Obligation Amount"), provided, that the Final Obligation Amount shall in no event be less than $47,000,000 (the "Obligation Minimum") or more than $66,000,000 (the "Obligation Maximum) with each such amount net of any amounts received by the Lenders on or prior to receipt of the Deposit Amount,[2] and (1) provided however, that the Company retains, among other rights, the right to assert that all offsets, payments and credits have not been allowed, including without limitation, the credit due for the U.S. Bank funds previously taken by Lenders and (2) provided further, that the Texas Court's decision shall be final and non-appealable and not subject to reconsideration, and shall be binding on all the Parties to this Agreement.

The Texas suit was tried to the court over several days in December 2017. After hearing the evidence, the court found that Navidea had breached the loan

---

[2] The "Deposit Amount" is the $59 million Navidea agreed to pay CRG under the settlement agreement.

agreement with CRG and that CRG had incurred damages in excess of $66 million. After subtracting the $59 million Navidea had paid under the settlement agreement from the Final Obligation Amount of $66 million, the court signed a judgment ordering Navidea to pay CRG $7 million.

Navidea immediately filed a letter and emergency motion to stay execution, arguing that the trial court should correct its "math errors" and reduce the judgment to account for CRG's receipt of the swept funds and other reductions. Navidea also filed a motion to correct the judgment in which it argued that the trial court should correct the "math error" in its judgment to reduce the amount of money owed to CRG from $7 million to approximately $2 million.

On January 10, 2018, the trial court signed an amended final judgment again ordering Navidea to pay CRG $7 million damages. The judgment specified that the $7 million "is new money, in addition to the $59,000.000.00 previously paid to [CRG] pursuant to the high-low settlement in this case." The judgment also informed the parties that "no additional filings or motions or corrections will be accepted by this Court pursuant to the plain language of the Parties' agreements" and that the court would "not hold any additional hearings in this case." The same day, the court filed detailed amended findings of fact and conclusions of law.

Navidea then filed an "Emergency Motion to Set Supersedeas Bond and to Modify the Judgment," arguing that the trial court's judgment failed to account for the swept funds and seeking a supersedeas bond in the amount Navidea believed it owed to CRG. Because Texas procedure requires the court to set the amount of a supersedeas bond, the court held a hearing on Navidea's motion. At the hearing, the court rejected Navidea's argument, stating:

4

The answer is that it is not in excess of what the Court intended to issue. The Court meant what it said, $7 million in new money, period. That's what the judgment says. That's what it means. That's what the evidence was at trial.

The court also stated that "the evidence sufficiently demonstrated that [CRG is] entitled to an additional $7 million and that the swept funds were just as easily contemplated in the 59 million." The trial court ordered that Navidea file a cash bond of $7,717,500.00 if it wished to appeal.[3] This appeal followed.

## WAIVER OF RIGHT TO APPEAL

In a single issue, Navidea contends that the trial court erred by awarding damages that CRG conceded it did not owe, namely the swept funds. According to Navidea, the trial court's inclusion of the swept funds in its calculations constitutes a double recovery that is not supported by legally or factually sufficient evidence.

CRG disagrees that the evidence is insufficient to support the judgment. CRG's primary argument, however, is that Navidea's appeal is barred because both parties expressly and without qualification waived their right to appeal in the settlement agreement and therefore the appeal should be dismissed.

Anticipating that CRG would argue that Navidea waived its right to appeal, Navidea makes to two arguments in support of its asserted right to appeal. First, Navidea argues that it waived only its right to appeal the trial court's determination of the Final Obligation Amount, and not the calculation of damages based on that determination. Second, Navidea argues that a waiver of appeal does not bar an appeal of a gross mistake or an absurd result.

---

[3] After this order was filed, Navidea filed another suit in the Ohio court alleging numerous claims against CRG, which spawned additional filings by the parties and rulings in both the Texas and Ohio courts, including this court. None of these matters are before us in this appeal.

**A.      The Scope of the Parties' Waiver of Appeal**

Navidea first contends that it did not waive the right to pursue this appeal. According to Navidea, it waived appeal of the trial court's determination of the Final Obligation Amount, but it did not waive its right to appeal a damages award based on the Final Obligation Amount. Navidea's argument requires us to determine the scope of the settlement agreement's waiver of appeal.

The settlement agreement expressly provides that it is "governed by, construed, and enforced" in accordance with New York law, so we look to that law for guidance. Under New York law, settlement agreements and stipulations are "favored by the courts and not lightly cast aside." *Hallock v. State*, 474 N.E.2d 1178, 1180 (N.Y. 1984); *see Cunha v. Shapiro*, 42 A.D.3d 95, 100 (N.Y. App. Div. 2007) ("The strict enforcement of open-court stipulations of settlement serves the interests of efficient dispute resolution, the management of court calendars, and the integrity of the litigation process."). As with a contract, courts should not disturb a valid stipulation of settlement absent a showing of good cause such as fraud, collusion, mistake or duress; or unless the agreement is unconscionable or suggests an ambiguity indicating that the words did not fully and accurately represent the parties' agreement. *McCoy v. Feinman*, 99 N.Y.2d 295, 302 (N.Y. 2002); *Hallock*, 474 N.E.2d at 1181.

New York law recognizes and regularly enforces stipulations and settlement agreements that include a waiver of the right to appeal. *See, e.g. Cunha*, 42 A.D.3d at 98–101 (enforcing high-low settlement agreement triggered by jury verdict and noting that the settlement agreement's provision that there would be "no appeals or post-trial motions" was "[c]onsistent with the concept of settlement"); *Guardino v. Kidd*, 305 A.D.2d 635, 635 (N.Y. App. Div. 2003) (holding defendant in foreclosure action waived his right to appeal by stipulation and therefore the appeal

"must be dismissed"); *Ogu v. Faulkner*, 265 A.D. 469, 469 (N.Y. App. Div. 1999) (dismissing appeal based on a "complete settlement" of the parties' dispute because the parties stipulated in open court that they could "never come back to court ever again" with respect to automobile collision or injuries sustained); *Matter of Dep't of Social Servs. v. Herbert R.*, 213 A.D.2d 636, 636 (N.Y. App. Div. 1995) (dismissing appeal when appellant stipulated to waive his right to appeal from fact-finding adjudication and failed to show any grounds upon which to vacate the stipulation of settlement).

Navidea does not contend that New York law would not recognize the settlement agreement's waiver of appeal; rather, Navidea contends that the waiver is confined to the settlement agreement's high-low provision and does not purport to apply to the entire case. Navidea argues that the waiver of appeal does not expressly state that it applies to "the judgment," the "entire case," or the "dispute." Navidea also argues that the waiver of appeal is appended to the end of the high-low provision and merely applies to "the Texas Court's decision," which Navidea maintains is limited to determining whether the Final Obligation Amount is $47 million or $66 million "or some amount in between." Thus, according to Navidea, the parties merely waived the appeal of the trial court's "decision" about the Final Obligation Amount but not the right to appeal an erroneous damages award.

As additional support for its position, Navidea asserts that if the parties had intended the waiver of appeal to be broader, the parties understood how to draft the correct language. Navidea points to the "Governing Law" section of the settlement agreement that includes references to "all" or "any" proceedings or matters. Navidea also suggests that a right to appeal the trial court's decision was provided in the Governing Law section as highlighted:

[A]ll legal proceedings concerning the interpretation, enforcement and defense of the transactions contemplated by this Agreement (and any and all Exhibits hereto) shall be commenced exclusively in the Texas Court (**and appealed only to a court with jurisdiction over the Texas Court's decisions**) and each Party submits to the exclusive jurisdiction of the Texas Court (**or any appeals court with jurisdiction over the Texas Court's decisions**) for the adjudication of any dispute thereunder or in connection therewith . . . .

We are not persuaded by Navidea's arguments. First, it is evident that when viewed in the context of the entire section, the waiver of appeal is not limited to the trial court's determination of the Final Obligation Amount, but applies to the entirety of the adjudication of the "Texas Claims" in the "Texas Action" between Navidea (the Company) and CRG (the Lenders):

> Section 2.　Texas Court Determination of Remaining Obligations.
>
> Section 2.1 The Texas Claims. The Company and the Lenders shall continue to litigate, in the Texas Court as part of the Texas Action,[4] the Lenders' claims against the Company arising under the Loan Documents and the Company's defenses and affirmative defenses thereto, (the "**Texas Claims**"), provided, however, that (a) the Company shall withdraw its counterclaims against the Agent and the Lenders in the Texas Action by filing, on the Closing Date, a Notice of Nonsuit With Prejudice, substantially in the form of Exhibit 2.1(a) hereto, with the Texas Court in the Texas Action and (b) the Company hereby agrees not to assert in the future such (or similar) counterclaims against the Agent and/or the Lenders and/or their affiliates in the Texas Action. For avoidance of doubt, the Texas Claims shall include all defenses and affirmative defenses, whether contractual or extra-contractual, (including, without limitation, rights of setoff and offset) to the causes of action pled by the Lenders in the Texas Action (collectively, "**Defenses**"), provided that the Defenses are permitted by New York law, in a manner consistent with the mediation transcript, dated February 22, 2017, Case No.16CV-5801, a

---

[4] The "Texas Action" is defined as CRG's lawsuit against Navidea filed on April 7, 2016. The "Texas Court" is defined as the 151st Judicial District Court of Harris County.

8

copy of which is attached hereto as Exhibit 2.l(b). The Texas Court shall adjudicate the Texas Claims to determine the final amount of the Obligations owed by the Company to the Lenders under the Loan Documents (the "**Final Obligation Amount**"), provided, that the Final Obligation Amount shall in no event be less than $47,000,000 (the "**Obligation Minimum**") or more than $66,000,000 (the "**Obligation Maximum**") with each such amount net of any amounts received by the Lenders on or prior to receipt of the Deposit Amount, and (1) provided however, that the Company retains, among other rights, the right to assert that all offsets, payments and credits have not been allowed, including without limitation, the credit due for the U.S. Bank funds previously taken by Lenders and (2) provided further, that the Texas Court's decision shall be final and non-appealable and not subject to reconsideration, and shall be binding on all of the Parties to this Agreement. In furtherance thereof, the Lenders and the Company shall notify the Texas Court of this Agreement.

This section addresses the portion of the parties' global settlement agreement concerning the litigation of CRG's Texas Claims in the Texas Action. As to the Texas Claims, Navidea agreed to nonsuit its counterclaims but retained the right to assert "all defenses and affirmative defenses" to those claims, including "the credit due for the U.S. Bank Funds previously taken by Lenders[,]" i.e., the swept funds that are the subject of this appeal. The Texas Court is then directed to "*adjudicate the Texas Claims*" to "*determine*" the Final Obligation Amount "*net* of any amounts received by the Lenders on or prior to receipt of the [$59 million Navidea paid under the settlement agreement]" to reach its "decision."

We conclude that the only fair reading of the reference to the "Texas Court's decision" is that it refers to the trial court's adjudication of the Texas Claims, which encompasses the determination of the Final Obligation Amount "net of" (i.e., minus) any amounts CRG received before Navidea's payment of the $59 million, subject to Navidea's right to assert a credit due for the swept funds and other defenses. In this case, the trial court's amended final judgment is the

"decision" that is "final and non-appealable," "not subject to reconsideration," and "binding" on all parties.

Our conclusion is supported by the insertion of no less than three successive phrases to emphasize the finality of the trial court's decision, contrary to Navidea's assertion that the parties intended to leave some aspects of the Texas Court's adjudication of the Texas Claims appealable. Moreover, the Ohio judge who heard the parties' stipulation recited his understanding that the dispute between Navidea and CRG regarding the Texas loan and any amounts owed "will be litigated in Texas before the judge that it's currently set in front of with no appeal. That's a final decision."[5] Navidea did not object to the Ohio judge's statement that the parties were waiving the right to appeal the Texas Court's decision without qualification, indicating its agreement to a complete settlement. *See Cunha*, 42 A.D.3d at 99–100.[6]

Navidea's general references to the section on "Governing Law" do not compel a different result. The recitation of a right to appeal in that section is limited to subsequent legal proceedings "concerning the interpretation, enforcement and defense of the transactions contemplated by" the settlement

---

[5] The reporter's record of this hearing is incorporated into the settlement agreement. We also note that during the stipulation, Navidea's counsel stated that although CRG retained the swept funds, Navidea reserved the right to argue that the amount of the swept funds should be credited back to Navidea in addition to its other arguments in the Texas case.

[6] Because Navidea specifically stipulated that it agreed to waive the right to appeal the trial court's "decision" rather than some limited aspect of that decision, the cases on which Navidea relies are easily distinguishable. *See Grochowski v. Fudella*, 70 A.D.3d 1407, 1408 (N.Y. App. Div. 2010) (holding that stipulation waiving the right to request a directed verdict did not preclude the filing of a motion to set aside the verdict as against the weight of the evidence or a motion for new trial); *Rodriguez v. Villarreal*, 314 S.W.3d 636, 645–46 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding that right to appeal was not waived when jury's verdict did not trigger terms of stipulated high-low settlement and parties' stipulation at most waived only the right to appeal the jury's verdict rather than the judgment).

10

agreement that are commenced in the Texas Court "[f]rom and after" the settlement agreement's effective date. Because CRG's Texas suit was necessarily filed well before the effective date of the settlement agreement, the provision cannot apply to that suit.

An unambiguous settlement agreement or stipulation is a contract that must be enforced according to the plain meaning of its terms. *McCoy*, 99 N.E.2d at 302; *Erie Blvd. Hydropower, L.P. v. State*, 113 A.D.3d 906, 907 (N.Y. App. Div. 2014). Navidea's argument—that the only non-appealable "decision" is the trial court's determination of the Final Obligation Amount—is unsupported by the section's plain text and inconsistent with the purpose of settlements generally as a means of expediting and simplifying the resolution of disputes. *See Cuhna*, 42 A.D.3d at 98; *see also Sacco v. Profit*, 133 A.D.2d 535, 535 (N.Y. App. Div. 1987) (dismissing appeal based on stipulation that appellant agreed not to appeal from the court's determination, noting that parties "are free to chart their own litigation course and may stipulate that the decision of a lower court shall be final, thus waiving their right of appeal").

## B. Gross Mistake or Absurd Result

Navidea next argues that, even if the waiver of appeal applies, it does not prevent the appeal of a judgment when there is a gross mistake or the judgment would lead to an absurd result. As noted above, under New York law, a valid settlement agreement, like a contract, will not be invalidated "absent a showing of good cause such as fraud, collusion, mistake or duress; or unless the agreement is unconscionable or contrary to public policy; or unless it suggests an ambiguity indicating that the words did not fully and accurately represent the parties' agreement." *McCoy*, 99 N.Y.2d at 302 (citations omitted); *see Hallock*, 474 N.E.2d at 1180–81.

11

### 1.    *Navidea has not shown a gross mistake.*

In support of its argument against enforcement of the waiver of appeal based on gross mistake, Navidea cites a Texas case holding that a waiver of appeal did not preclude the appellants from appealing a "gross mistake" in the judgment because "it was not adequate to effectuate the parties' agreement." *See Steele v. McDonald*, No. 10-05-00266-CV, 2007 WL 2200008, at *6 (Tex. App.—Waco Aug. 1, 2007, pet. denied) (mem. op.) (citing *Barsness v. Scott*, 126 S.W.3d 232, 238 (Tex. App.—San Antonio 2003, pet. denied)); *accord McCoy*, 99 N.Y.2d at 302. The court concluded that the judgment was erroneous because the legal descriptions of the real property affected by the judgment were insufficient, requiring the court to modify the judgment to correct the inadequate property descriptions to fully effectuate the parties' settlement agreement. *See Steele*, 2007 WL 2200008, at *4–6.

Navidea contends that the trial court's judgment failed to effectuate the parties' agreement because CRG conceded that it had applied the swept funds to certain categories of interest, fees, and expenses specified in the loan agreement that were later reflected as amounts due and owing in the trial court's amended findings of fact. Navidea's real complaint is that the evidence is insufficient to support the trial court's judgment, not that the judgment does not fully and accurately represent the parties' settlement agreement.[7] As previously explained, however, the settlement agreement specified how the trial court was to render a decision the Texas Claims, and the record reflects that the trial court's judgment fully effectuates the parties' agreement.

---

[7] Navidea's argument is further undercut by its specific references in the settlement agreement and stipulation to preserving its right to assert a credit for the swept funds as a defense to CRG's claims, which suggests that the applicability of the swept funds to Navidea's debt was a contested issue.

Navidea also contends that the trial court committed a second kind of gross mistake by its "failure to exercise an honest judgment in reaching a decision." In support of this argument, Navidea again relies on Texas cases. *See Xtria L.L.C. v. Int'l Ins. Alliance Inc.*, 286 S.W.3d 586, 598 (Tex. App.—Texarkana 2009, pet. denied); *Brown v. Eubank*, 443 S.W.2d 386, 391 (Tex. App.—Dallas 1969, no writ). Navidea complains that because there were no conflicting claims regarding the swept funds, the trial court committed a gross mistake when it awarded them to CRG despite CRG's concession. Assuming such a mistake would be recognized under New York law, we note that a failure to exercise honest judgment does not mean an egregious mistake of fact or law. *Xtria*, 286 S.W.3d at 598. Moreover, "[a] judgment rendered after honest consideration given to conflicting claims, *no matter how erroneous*, is not arbitrary or capricious." *Id.* (emphasis added) The record shows that the trial court heard argument and considered evidence in a multi-day trial and in post-judgment motions. We conclude that on this record, Navidea has failed to demonstrate that the trial court failed to exercise honest judgment in reaching its decision. *See id*.

## 2. *Navidea has not shown an absurd result.*

Finally, Navidea contends that a waiver of appeal does not apply to the extent that it "could lead to an absurd result." *See Rodriguez*, 314 S.W.3d at 645. Navidea argues that the trial court violated the settlement agreement by awarding CRG a double recovery of the swept funds and complains that "it is difficult to conceive of a more absurd result" than an award of relief that a party did not seek. But Navidea cites no case in which a Texas or New York court has invalidated an otherwise valid waiver of appeal based on the type of mistake of fact alleged here, and we decline to do so in this case.

13

## CONCLUSION

We conclude that Navidea waived its right to appeal the trial court's judgment in the parties' settlement agreement and, accordingly, we dismiss the appeal.


/s/      Ken Wise
         Justice


Panel consists of Justices Wise, Zimmerer, and Spain.

14