OPINION OF THE COURT
 

 Rosenblatt, J.
 

 Social Services Law § 104 (2) limits the amount a public welfare official may recoup from an infant who receives public assistance benefits. In these two cases, we must decide whether Medicaid’s recoupment provisions are subject to this limitation. We conclude that they are not.
 

 Kimberly Santiago
 

 Kimberly Santiago, an infant, was allegedly poisoned by lead paint in her apartment. Benita Santiago, the child’s mother, sued their landlord on behalf of herself and Kimberly, and the parties settled the case for $140,000. After subtracting attorneys’ fees and expenses, the Santiagos netted $89,759, which they proposed to deposit in a supplemental needs trust.
 

 Kimberly had received $12,877 in health care benefits under the Medicaid program. The New York City Department of Social Services asserted a lien on the settlement proceeds to recoup those benefits and demanded that it be satisfied before the Santiagos funded the trust. The Santiagos moved in Supreme Court to vacate the lien, arguing that Social Services
 
 *688
 
 Law § 104 (2) prevents the City from recovering from an infant. Agreeing with the Santiagos, Supreme Court vacated the lien. The City appealed, and the Appellate Division reversed, holding that the City may recoup fully notwithstanding Social Services Law § 104 (2). The Appellate Division also granted the Santiagos leave to appeal to this Court.
 

 Abraham Gold
 

 Kathleen Gold suffered a grand mal seizure during her pregnancy and her baby, Abraham, was delivered prematurely by emergency Caesarean section. Abraham now suffers from spastic quadriplegic cerebral palsy. Kathleen Gold, on behalf of herself and her child, sued her doctor and the hospital, alleging that they negligently failed to treat the seizure. During jury deliberations the parties entered into a “high-low” agreement. They stipulated that if the verdict, reduced to present value, exceeded $5 million, the Golds would receive $5 million. If, on the other hand, there was a defense verdict, or one for less than $450,000, the Golds would receive $450,000. The jury’s verdict significantly exceeded $5 million, so the high-low agreement capped the settlement payable at that amount.
 

 Since his birth, Abraham has received Medicaid benefits for medical assistance and custodial care. To recoup their expenditures, the Broome County Department of Social Services and the New York Office of Mental Retardation and Developmental Disabilities asserted liens on the settlement proceeds in the amounts of $62,410 and $1,707,884, respectively. In Supreme Court, the Golds moved for an order reducing the liens proportionally, according to the ratio that the settlement bore to the jury’s verdict. Thus, under the Golds’ proposed formula, Supreme Court would have allocated $103,000 of the settlement toward the full satisfaction of the liens, and the remainder toward, among other things, attorneys’ fees and disbursements and a supplemental needs trust for Abraham. The Medicaid agencies objected to the reduction of their liens.
 

 Supreme Court denied the Golds’ motion, and allocated the settlement proceeds as follows: $705,359 for attorneys’ fees and disbursements, $1,784,680 for the Medicaid liens, $2,173,626 for a reserve to pay for Abraham’s post-verdict medical and custodial care, and $336,335 for a supplemental needs trust for Abraham. The Golds appealed and the Appellate Division affirmed, holding that, notwithstanding Social Services Law § 104 (2), the Medicaid liens must be fully satisfied, and that Supreme Court did not abuse its discretion by reserving
 
 *689
 
 $2,173,626 for Abraham’s post-verdict medical and custodial care. We granted the Golds leave to appeal.
 

 In each case, the appellant argues that the Appellate Division erred by allowing the Medicaid agencies to satisfy the full amount of their liens from the settlement proceeds. Appellants contend that because they are infants, the agencies were prohibited by Social Services Law § 104 (2) from recouping their expenditures. We disagree.
 

 Social Services Law § 104 (1) has long authorized public welfare officials to bring proceedings against recipients of various forms of public assistance who obtain property within 10 years after receiving such benefits. Section 104 (2), however, restricts an agency’s ability to recover under section 104 (1), when the public assistance recipient is under 21:
 

 “No right of action shall accrue against a person under twenty-one years of age by reason of the assistance or care granted to him unless at the time it was granted the person was possessed of money and property in excess of his reasonable requirements, taking into account his maintenance, education, medical care and any other factors applicable to his condition” (Social Services Law § 104 [2]).
 

 The Social Services Law also authorizes public welfare officials to place a lien on any personal injury suit by a public assistance recipient against a responsible party
 
 (see,
 
 Social Services Law § 104-b). Once perfected in accordance with the statutory notice and filing provisions, the lien attaches to “any verdict, decision, decree, judgment, award or final order in any suit, action or proceeding in any court or administrative tribunal of this state respecting such injuries, as well as the proceeds of any settlement thereof’
 
 (see,
 
 Social Services Law § 104-b [3]).
 

 In
 
 Baker v Sterling
 
 (39 NY2d 397, 400), the New York City Department of Social Services attempted to recoup (from an infant’s personal injury settlement) moneys it had expended for the infant’s medical assistance. The Department relied on the recoupment provision in Social Services Law § 104 (1) and the lien provision in Social Services Law § 104-b. This Court concluded that section 104 (2)’s limitation on recoupment from infants under section 104 (1) was applicable, and that the Department could not recover any portion of the settlement representing compensation for the infant’s personal injuries, because such compensation could not be considered “ ‘money or
 
 *690
 
 property in excess of his reasonable requirements’ ” (39 NY2d, at 405-406,
 
 supra
 
 [quoting Social Services Law § 104 (2)]). The Court held, however, that the portion of the settlement representing payment for past medical expenses was “subject to the lien and recovery by the Department”
 
 (id.,
 
 at 406,
 
 supra).
 

 Relying heavily on
 
 Baker v Sterling,
 
 appellants argue that Social Services Law § 104 (2) provides a blanket limitation on Medicaid’s assignment, subrogation and recoupment provisions when the Medicaid recipient is an infant. They contend, in essence, that under
 
 Baker,
 
 Medicaid can recover only that portion of the judgment (or settlement) earmarked for past medical expenses.
 

 Since this Court decided
 
 Baker v Sterling,
 
 the relevant regulatory scheme has undergone considerable development.
 
 *
 
 Under Federal law States must “take all reasonable measures to ascertain the legal liability of third parties * * * to pay for care and services available under the plan” and seek reimbursement from them
 
 (see,
 
 42 USC § 1396a [a] [25] [A]-[B]). To further this objective, Congress and the Legislature have added special Medicaid provisions pertaining to assignment, subrogation and recoupment
 
 (see,
 
 Pub L 103-66, tit XIII, § 13622, 107 US Stat 312, 632; L 1981, ch 319, §§ 1-2). As a condition of eligibility, applicants must assign to the appropriate Medicaid agency their rights to seek reimbursement from third parties up to the amount of medical assistance paid by Medicaid
 
 (see,
 
 42 USC § 1396k [a] [1] [A]; 42 CFR 433.146 [c]; Social Services Law § 366 [4] [h] [1]; 18 NYCRR 360-7.4 [a] [4]). In addition, the Medicaid agency is subrogated, to the extent of its expenditures for medical care furnished, to any rights that a Medicaid recipient may have to third-party reimbursement
 
 (see,
 
 42 USC § 1396a [a] [25] [H]; Social Services Law § 367-a [2] [b]; 18 NYCRR 360-7.4 [a] [6]).
 

 As a result of this statutory scheme, the Medicaid agency “obtains all of the rights that the recipient has as against the third party to recover for medical expenses, including the ability to immediately pursue those claims against the third party”
 
 (see, Cricchio v Pennisi,
 
 90 NY2d 296, 307;
 
 see also, Calvanese v Calvanese,
 
 93 NY2d 111, 117). Thus, as lawmakers have repeatedly stressed — and as evidenced by these congressional and legislative enactments — Medicaid remains the “payor of
 
 *691
 
 last resort” (S Rep No. 146, 99th Cong, 2d Sess 1, 312, reprinted in 1986 US Code Cong & Admin News 42, 279).
 

 In
 
 Cricchio v Pennisi
 
 (90 NY2d, at 307, n 4,
 
 supra),
 
 adult Medicaid recipients took a position similar to appellants’. They argued that Social Services Law § 104 (3) — another restriction on general recoupment under section 104 (1) — limited the Department’s ability to place a Medicaid lien against a personal injury settlement. Rejecting that argument, we held:
 

 “[T]he right to recover from responsible third parties at issue is not derived from section 104, but rather from [Medicaid’s own] assignment, subrogation, and recoupment provisions * * *. Accordingly,
 
 any limitations
 
 found in section 104 * * * are not relevant here”
 
 (id.
 
 [emphasis added]).
 

 We reiterated this point in
 
 Calvanese v Calvanese
 
 (93 NY2d, at 118,
 
 supra),
 
 stating that the Department of Social Services has “broad authority to pursue any amount of third-party reimbursement to which [the recipient’s] are entitled” and that the Department’s authority to enforce a lien is “correspondingly broad.”
 

 The
 
 Cricchio
 
 /
 
 Calvanese
 
 analysis is applicable here. As in those cases, the Medicaid agencies are not relying on Social Services Law § 104 (1) for their recoupment rights. Rather, they rely on Medicaid’s own assignment, subrogation and recoupment provisions
 
 (see,
 
 Social Services Law § 366 [4] [h] [1]; § 367-a [2] [b]; 18 NYCRR 360-7.4 [a] [4],.[6]). The agencies have broad authority under those provisions to satisfy the lien from the entire amount of the personal injury judgment or settlement. Contrary to appellants’ contention, our holding does not read the limitation in section 104 (2) out of existence. This case involves unique recoupment provisions specific to Medicaid, while section 104 (1) continues to be a recoupment mechanism when other forms of public assistance are involved. Thus, when public welfare officials rely solely on section 104 (1), the limitation in section 104 (2) continues to apply.
 

 Finally, the Golds argue that the trial court improperly ordered that $2,173,626 be set aside from the settlement proceeds as a reserve for Abraham’s future medical and custodial needs. Instead, they contend, the court should have had these funds placed in a supplemental needs trust so as to preserve Abraham’s continued Medicaid eligibility. Under CPLR 1206, the trial court has discretion to invest or disburse the proceeds of an infant’s recovery in order to serve the
 
 *692
 
 infant’s best interests. Here, however, the trial court appears not to have exercised that discretion but instead to have made its allocations mathematically — without citing any statutory or other authority — based on the proportional share of the various damage items in the jury’s verdict. Moreover, the parties have not cited any reason why the trial court was under an obligation to do so if it believed that an alternative arrangement would best serve the infant’s interests. Thus, we remit the matter to Supreme Court for exercise of its discretion pursuant to CPLR 1206 as to the amount to be placed in a supplemental needs trust.
 

 We have reviewed appellants’ remaining contentions and find them without merit.
 

 Accordingly, in
 
 Gold v United Health Servs. Hosps.,
 
 the order of the Appellate Division should be modified, without costs, and the case remitted to Supreme Court for further proceedings in accordance with this opinion, and as so modified affirmed. In
 
 Santiago v Craighrand Realty
 
 Corp., the order of the Appellate Division should be affirmed, without costs, and the certified question answered in the affirmative.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick and Wesley concur; Judge Graffeo taking no part.
 

 In
 
 Gold v United Health Servs. Hosps.:
 
 Order modified, etc.
 

 In
 
 Santiago v Craighrand Realty Corp.:
 
 Order affirmed, etc.
 

 *
 

 To receive Federal funding, States must conform their Medicaid plans to evolving Federal standards (see, 42 USC § 1396a; Social Services Law § 363-a [1]).