■ In the Matter of the Estate of ABRAHAM XX., Deceased. KATHLEEN XX., as Administrator of the Estate of ABRAHAM XX., Deceased, Respondent-Appellant; STATE OF NEW YORK, Appellant-Respondent. [827 NYS2d 769]—

Cardona, P.J. (1) Cross appeals from an order of the Supreme Court (Peckman, J.), entered September 8, 2005 in Broome County, which, in a proceeding pursuant to Mental Hygiene Law § 43.11, partially granted petitioner's motion for summary judgment seeking a refund of certain sums paid to respondent from the remainder of a supplemental needs trust, and (2) appeal from the judgment entered thereon.

In July 1992, Abraham XX. was born with spastic quadriplegic cerebral palsy. Litigation brought on Abraham's behalf resulted in a malpractice verdict in excess of $100,000,000, which was reduced to $5,000,000 pursuant to a "high-low" settlement agreement entered into during jury deliberations.[1] By order of December 22, 1998, $1,707,884.95 of the settlement proceeds was allocated to the Office of Mental Retardation and Developmental Disabilities (hereinafter OMRDD) to satisfy a Medicaid lien covering medical assistance provided to Abraham through March 23, 1998, the date of the verdict. An additional $336,334.71 was allocated to fund a supplemental needs trust (hereinafter SNT)[2] for Abraham's benefit, and $2,173,625.83 was set aside to pay Abraham's postverdict medical expenses. The SNT was funded on September 13, 1999, and two days later Abraham received the amount allocated to postverdict medical expenses. Following the plaintiffs' appeal of the order allocating the settlement proceeds, the latter amount was also placed in the SNT, retroactive to December 22, 1998, the date of the original order.

---

1. The underlying facts are more fully set forth by this Court and the Court of Appeals in *Gold v United Health Servs. Hosps.* (261 AD2d 67 [1999], *mod* 95 NY2d 683 [2001]).

2. A *supplemental needs trust* is "a discretionary trust established for the benefit of a person with a severe and chronic or persistent disability" (EPTL 7-1.12 [a] [5]), "designed to enhance the quality of the disabled individual's life by providing for special needs without duplicating services covered byMedicaid or destroying Medicaid eligibility" (*Cricchio v Pennisi*, 90 NY2d 296, 303 [1997]).

Abraham died in June 2003. OMRDD thereafter asserted a verified supplemental claim against the SNT in the amount of $1,507,954.91 for Medicaid expenditures made during the period from March 24, 1998 through the end of October 2000. After the claim was paid, petitioner, Abraham's mother, commenced this proceeding seeking a refund of all or part of the funds recouped by OMRDD. On her subsequent motion for summary judgment, petitioner limited her request for relief to two specific amounts: $961,810.89 for the period from March 24, 1998 (the day after the verdict) through September 12, 1999 (the day before the first funds were deposited in the SNT), and $34,633.64 for the 16 days from October 16, 2000 through October 31, 2000 when Abraham was not a resident of any OMRDD facility. Respondent opposed the motion.

Supreme Court partially granted the motion by refunding petitioner $472,167.12 for the period from March 24, 1998 through December 22, 1998. The court reasoned that because respondent failed to amend the original Medicaid lien or appeal any interim order allocating the settlement funds, res judicata bars recovery of any additional Medicaid amounts expended prior to the funding of the SNT on December 22, 1998. The court otherwise denied the motion, holding that petitioner is not entitled to a refund for the period from December 23, 1998 to September 12, 1999 because the SNT was in existence during that time, and she is not entitled to a refund for the period from October 16, 2000 through October 31, 2000 because services were not billed by OMRDD for that period.

Respondent appeals from that part of Supreme Court's ruling which granted petitioner a partial refund; petitioner cross-appeals from the portions partially denying her motion. Applying both Federal and State Medicaid statutes, we now modify by granting summary judgment in respondent's favor for the full amount reimbursed to OMRDD for the period from March 24, 1998 to September 12, 1999. We further find that questions of fact exist as to the period from October 16, 2000 to October 31, 2000 such that neither party is entitled to summary judgment with respect thereto.

Initially, we do not agree with Supreme Court's conclusion that res judicata applies here. That doctrine forecloses litigation of "a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter" (*Matter of Hunter*, 4 NY3d 260, 269 [2005]; *see O'Brien v City of Syracuse*, 54 NY2d 353, 357 [1981]). The prior litigation involving Abraham resolved only the allocation of the malpractice settlement proceeds in accordance with the jury verdict,

which included satisfaction of the preverdict Medicaid lien and an allowance for Abraham's future medical and custodial care (*Gold v United Health Servs. Hosps.*, 261 AD2d 67 [1999], *mod* 95 NY2d 683 [2001]). The December 22, 1998 order specifically acknowledged that postverdict Medicaid expenses were not included in the settlement because those charges would be payable out of the funds allocated to Abraham's future medical care. Accordingly, although OMRDD raised the issue, the court never ruled on the merits of any claim for postverdict Medicaid expenses.

Turning now to the merits of that claim, petitioner accurately notes that 42 USC § 1396p (b) (1) provides that "medical assistance correctly paid on behalf of an individual" may not be recovered except in certain specified instances (*see also* Social Services Law § 369 [2] [b]). Contending that Medicaid benefits were correctly paid on Abraham's behalf between the time of the verdict and the funding of the SNT, and that his circumstances do not fit any of the enumerated exceptions, petitioner argues that OMRDD is precluded from seeking reimbursement from the SNT for that period. Respondent counters that 42 USC § 1396p (d) (4) (A) creates a further exception to 42 USC § 1396p (b) (1) that permits a state to recover from the remainder of an SNT "the total medical assistance" paid on the beneficiary's behalf (42 USC § 1396p [d] [4] [A]; *see* Social Services Law § 366 [2] [b] [2] [iii]). Respondent urges that to the extent those provisions conflict, the more recently enacted provision relating to SNTs should govern over the earlier enacted general provision regarding recovery of correctly paid Medicaid.

We hold that respondent is entitled to reimbursement of all Medicaid expended on Abraham's behalf. However, we do so for different reasons than those argued by respondent. As explained below, we do not agree with respondent that 42 USC § 1396p (d) (4) (A) creates an exception to 42 USC § 1396p (b) (1), nor do we see a conflict between those provisions. Rather, we conclude that respondent's right to reimbursement of all Medicaid expended on a beneficiary's behalf flows from the terms of the SNT agreement itself—an agreement voluntarily entered into by the beneficiary or his or her agent in order to obtain the significant advantage of preserving Medicaid eligibility while at the same time benefitting from the funds contained in the trust (*see* 42 USC § 1396p [d] [4] [A]; Social Services Law § 366 [2] [b] [2] [iii]; EPTL 7-1.12 [a] [5]).

By way of background, 42 USC § 1396p governs the broad areas of "Liens, adjustments and recoveries, and transfers of assets" as those subjects relate to Medicaid. Although housed

under one heading, these are distinct topics, treated in separate subsections of the statute. Subsection (b), relied on by petitioner, sets forth the rules on "Adjustment or recovery of medical assistance correctly paid under a State plan" from an individual's estate (42 USC § 1396p [b]; *see* Social Services Law § 369 [2] [b]); thus, that subsection concerns only recovery of benefits already paid on the recipient's behalf. By contrast, subsection (d) governs the "Treatment of trust amounts" as available resources in determining whether an individual is eligible to receive Medicaid benefits in the first instance (42 USC § 1396p [d]; *see* Social Services Law § 366 [2] [b] [2]). It is under this subsection that the provisions authorizing SNTs reside, signaling their primary purpose as a means to preserve a beneficiary's Medicaid eligibility while enhancing his or her quality of life (*see Cricchio v Pennisi*, 90 NY2d 296, 303 [1997]).

Specifically, subsection (d) (4) (A) provides that a qualified individual (*see* EPTL 7-1.12 [a] [5]) who elects to establish an SNT may exempt the corpus and income of that trust from consideration as available resources by including in the trust agreement a term specifying that a "[s]tate will receive all amounts remaining in the trust upon the death of [the] individual up to an amount equal to the *total* medical assistance paid on behalf of the individual under a State [Medicaid] plan" (42 USC § 1396p [d] [4] [A] [emphasis added]; *see* Social Services Law § 366 [2] [b] [2] [iii]). Thus, the statute does not direct recovery of Medicaid funds; rather, a state's right to reimbursement from a particular SNT derives from the terms of the trust agreement itself, which designates the state as the primary remainderman. While subsection (d) (4) (A) makes total reimbursement a condition of preserving Medicaid eligibility through an SNT, it neither creates an additional exception to subsection (b) (1) nor itself directs recovery of correctly paid Medicaid. It follows that none of the provisions at issue here is in conflict (*see* 42 USC § 1396p [b] [1]; [d] [4] [A]; Social Services Law § 369 [2] [b]; § 366 [2] [b] [2] [iii]). Petitioner, who elected to avail Abraham of the eligibility benefits of an SNT, is now bound by the terms of the trust agreement to reimburse respondent for all Medicaid expended on Abraham's behalf.

Petitioner next contends that OMRDD wrongfully claimed and received reimbursement for the 16-day period from October 16, 2000 through October 31, 2000. She notes that Abraham was discharged from OMRDD's facility on October 15, 2000 and received no medical assistance thereafter. In support of her argument that she should receive a refund for that period, she relies on OMRDD's verified supplemental claim which purports

to extend through October 31, 2000, but does not break down the charges by month. Respondent concedes both that Abraham received no medical assistance after October 15, 2000, and that the verified supplemental claim appears on its face to cover all of October 2000. However, in an attorney affirmation, respondent explains that OMRDD's practice is to leave an account open until the end of the month of discharge—which accounts for the appearance of the verified supplemental claim—but that OMRDD actually billed for only half of October 2000. In further support, respondent submits an OMRDD printout entitled "Detail Claims" which it asserts shows Medicaid expenditures for October 2000 totaling less than half of the amount expended in each of the six preceding months.

Relying on the "Detail Claims" printout, Supreme Court ruled that petitioner is not entitled to a refund for the 16 days at issue. In our view, however, conflicting inferences can be drawn from the "Detail Claims" and the verified supplemental claim, raising a fact question as to whether OMRDD improperly recovered funds from the SNT for the 16 days that Abraham was admittedly not a resident at any OMRDD facility. Accordingly, summary judgment is not warranted to either party on this issue.

In light of the foregoing, the parties' remaining contentions are rendered academic.

Mercure, Spain, Mugglin and Lahtinen, JJ., concur. Ordered that the order and judgment are modified, on the law, without costs, by reversing so much thereof as partially granted petitioner's motion and refunded to petitioner the sum of $472,167.12 plus interest; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.