[863 NYS2d 789]

In the Matter of RUBEN N. ELIZABETH T., Respondent; DEPART-
MENT OF SOCIAL SERVICES OF CITY OF NEW YORK, Appellant.

Second Department, September 16, 2008

APPEARANCES OF COUNSEL

*Michael A. Cardozo, Corporation Counsel*, New York City (*Kristin M. Helmers* and *Alan G. Krams* of counsel), for appellant.

*Jay J. Sangerman, PLLC*, New York City (*Ephrem Wertenteil* of counsel), for respondent.

### OPINION OF THE COURT

Angiolillo, J.

The issue presented on this appeal is the scope of entitlement of the Department of Social Services of the City of New York (hereinafter the DSS) to recovery, from the trust corpus of a supplemental needs trust, for the medical assistance provided by Medicaid to Ruben N., the beneficiary of the supplemental needs trust, over the course of his lifetime. The DSS claims that it was entitled, pursuant to the statutorily-required language of the supplemental needs trust, to recovery of the total medical assistance provided to Ruben N. over the course of his lifetime and not just the medical assistance provided to him after the creation of the supplemental needs trust.

We agree with the Supreme Court that the DSS is not entitled to recovery for medical assistance provided to Ruben N. prior to August 24, 2002 for reasons other than those stated by the Supreme Court. However, the DSS is entitled to recovery for medical assistance provided on or after August 24, 2002 through September 22, 2003.

Ruben N. was born with Down syndrome in 1964 and began receiving medical assistance under the State Medicaid plan on July 1, 1992. On July 14, 1997, he suffered an injury during corrective spinal surgery, which resulted in his partial paralysis such that he was no longer able to ambulate. A medical malpractice action was commenced by Ruben N.'s sister on his behalf against the hospital where the surgery was performed and several doctors. Ruben N. continued to receive medical assistance from the DSS, and the DSS filed a lien pursuant to Social Services Law § 104-b (hereinafter the Medicaid lien) for recovery from any award made in the medical malpractice action, for such assistance for which the third-party tortfeasor was found to be liable.

The parties to the medical malpractice action reached a settlement. Based upon the proposed settlement, the DSS agreed to accept the sum of $102,423.56 to settle the Medicaid lien. The amount necessary to settle the Medicaid lien was premised on a letter from the DSS stating that it would accept that amount on the Medicaid lien against the proceeds of the personal injury lawsuit, based on the proposed settlement of the lawsuit for the sum of $1,600,000. The letter further provided that the DSS reserved the right to collect any unpaid balance of the Medicaid lien if Ruben reached a further settlement that provided additional proceeds or if he should receive funds from another source such as the lottery; neither of those circumstances eventuated.

The settlement of the medical malpractice action was approved by the Supreme Court, Kings County (Patterson, J.), in an amended order dated August 23, 2002, with the direction that payment be made to the DSS in the amount of $102,423.56, in full satisfaction of the Medicaid lien to the date of the order. Pursuant to regulation, the Medicaid lien was required to be satisfied or otherwise resolved in order for the remaining funds received by Ruben N. to be disregarded, for purposes of eligibility to continue receiving Medicaid benefits, by placement in a supplemental needs trust (see 18 NYCRR 360-4.5 [b] [5] [ii]). As will be discussed herein, the Medicaid lien was limited to the medical assistance Ruben N. received as a result of the third-party tortfeasor's negligence. The lien was not and could not have been asserted in connection with any medical assistance provided to Ruben N. as a result of his Down syndrome condition; whether such assistance was provided prior to or subsequent to the medical malpractice. The settlement of the medical

malpractice action and settlement of the lien did not in any way address the other assistance that had been correctly paid to Ruben N.

In accordance with a further direction of the Supreme Court, Ruben N.'s sister petitioned for appointment as guardian of the person and property of Ruben N. and for approval of the creation of a supplemental needs trust. Ruben N. was declared to be an incapacitated person, and by order and judgment (one paper) dated January 15, 2003, Ruben N.'s sister was appointed as his guardian and a supplemental needs trust was created, with the sister as trustee.

Until the Supreme Court approved the settlement of the medical malpractice action, Ruben N. possessed a claim against a third party, but he did not have any present assets or resources to meet his needs. Once the settlement was approved, Ruben had assets and resources that ordinarily would have made him ineligible for continuing receipt of medical assistance. By placing those assets in a supplemental needs trust, his eligibility continued. The authorization for what have generically been called exception trusts, including what has come to be known in New York as supplemental needs trusts, is contained in 42 USC § 1396p (d) (4) (A) and Social Services Law § 366 (2) (b) (2) (ii). Those trusts were the exception to the general tightening of fiscal responsibility contained in the Federal Omnibus Budget Reconciliation Act of 1993 (Pub L 103-66, 107 US Stat 312) and New York's enactment of the present version of Social Services Law § 366.

The referenced sections are provisions which address an applicant's eligibility and a recipient's continuing eligibility to receive medical assistance. The federal provision, 42 USC § 1396p (d) (4) (A), deals with the treatment of trust amounts, both those that are considered as available resources and the exceptions; the state provision, Social Services Law § 366, is a general treatment of eligibility, with the trust exceptions addressed in the cited subparagraph.

New York adopted Estates, Powers and Trusts Law § 7-1.12 to allow for the creation of what have come to be called supplemental needs trusts. Those trusts were primarily intended to foster effective future care planning for disabled individuals whose basic needs were primarily met through government benefits or assistance programs (*see* Bill Jacket, L 1993, ch 433; *see also Cricchio v Pennisi*, 90 NY2d 296, 308-309 [1997]).

The supplemental needs trust created for Ruben N. contained a provision, as required by federal and state law (*see* 42 USC

§ 1396p [d] [4] [A]; Social Services Law § 366 [2] [b] [2] [iii]), that upon Ruben N.'s death, the State would receive all amounts remaining in the trust up to the total value of "all medical assistance" provided to Ruben N. On September 22, 2003, Ruben N. died.

The medical assistance provided to Ruben N. during his lifetime may be viewed in three different segments. Those are: the period from July 1, 1992 to July 13, 1997, when Ruben received medical assistance as a result of his Down syndrome; the period from July 14, 1997 to August 23, 2002, when he received medical assistance as a consequence of the failed medical procedure that left him partially paralyzed, in addition to the continued receipt of assistance attributable to his Down syndrome; and the period from August 24, 2002 until his death on September 22, 2003, when he continued to receive medical assistance notwithstanding his receipt of assets from the settlement of the malpractice action.

In her amended final accounting, the trustee took the position that the State was only entitled to reimbursement of the amount of medical assistance provided to Ruben N. after the creation of the trust, January 15, 2003, until his death, the sum of $50,226.63. The DSS asserted that it was entitled to recover the sum of $632,714.22 pursuant to the terms of the trust, representing the total of all medical assistance provided to Ruben over the course of his lifetime. The DSS sought to recover the medical assistance provided to Ruben, as a result of his Down syndrome for the five years (July 1, 1992 to July 13, 1997) prior to the medical malpractice that further incapacitated him; to recover that portion of the medical assistance provided to Ruben N. during the five years (July 14, 1997 to August 23, 2002) preceding the settlement of the medical malpractice action that was not previously recovered with the resolution of the Medicaid lien addressed to the medical assistance for which the tortfeasor was liable; and to recover the total medical assistance provided after the August 23, 2002 settlement of the medical malpractice action, not just the portion provided after the creation of the supplemental needs trust. The Supreme Court held that the DSS was entitled to recover only the sum of $50,226.63, for the period after the creation of the supplemental needs trust.

## Recoupment/Anti-Lien Provisions and Supplemental Needs Trust Language

The DSS's claim to recovery of the total medical assistance provided to Ruben N. over the course of his lifetime is based on the language which is required to be included in all exception trusts. The state and federal provisions both require that a qualifying trust contain a provision that the State will receive, upon the death of the beneficiary, all amounts remaining in the trust up to the total value of "all medical assistance" paid on behalf of the beneficiary (Social Services Law § 366 [2] [b] [2] [iii]; *see* 42 USC § 1396p [d] [4]). The DSS's argument would be persuasive if that language were read alone and apart from the rest of the medical assistance statutes. However, the referenced language is just part of provisions relating to the treatment of trust assets on consideration of eligibility for benefits. Those provisions are part of extensive provisions governing the medical assistance program, which include specific provisions restricting the scope of recovery of medical assistance correctly paid. An application of the trust language in the manner proposed by the DSS would be in direct contravention of the recovery restrictions (*cf. Matter of Abraham XX.*, 36 AD3d 1085 [2007], *lv granted* 10 NY3d 706 [2008]).

"As a condition of the receipt of Federal program funding, State Medicaid plans must conform with the statutory standards established by Federal law and the regulations promulgated by the Secretary of Health and Human Services (42 USC § 1396a; Social Services Law § 363-a [1])" (*Cricchio v Pennisi*, 90 NY2d 296, 305 [1997]). The requirements that a state plan must include are set forth in 42 USC § 1396a. Paragraph (a) (18) of that section provides that the state plan must: "comply with the provisions of section 1396p of this title with respect to liens, adjustments and recoveries of medical assistance *correctly paid,* transfers of assets, and treatment of certain trusts" (42 USC § 1396a [a] [18] [emphasis added]).

Paragraph (b) of 42 USC § 1396p addresses the adjustment or recovery of medical assistance correctly paid. That paragraph begins with the statement: "No adjustment or recovery of any medical assistance *correctly paid* on behalf of an individual under the State plan may be made" (42 USC § 1396p [b] [1] [emphasis added]). The section then continues with limited exceptions to the no-recovery rule: specific instances where the state is required to make an adjustment or recovery for medical assistance correctly paid to certain individuals.

The exceptions include: (1) assistance provided to an individual who is an inpatient at a nursing facility, intermediate care facility for the mentally retarded or other medical institution, if the individual is required to pay all but a minimum of his income for such care; (2) an individual who the state determines, after notice and an opportunity to be heard, cannot reasonably be expected to be discharged from the medical institution and return home; (3) an individual who was 55 years of age or older who received specified services, or at the option of the state any services; and (4) an individual who received benefits or was entitled to receive benefits from a long term care policy and received medical assistance payments for nursing facility and other long term care services (*see* 42 USC § 1396p [b]).

Ruben N.'s receipt of medical assistance does not fall within any of these four specified categories of exceptions to the no-recovery of medical assistance correctly paid mandate.

The New York State provisions governing the recovery of medical assistance correctly paid, as required by 42 USC § 1396a (a) (18), are contained in Social Services Law § 369 (2) (b) (i): *"Notwithstanding any inconsistent provision of this chapter or other law,* no adjustment or recovery may be made against the property of any individual on account of any medical assistance *correctly paid* to or on behalf of an individual under this title" (emphasis added). That subparagraph then continues with specified exceptions where recovery or adjustment of medical assistance correctly paid is required. Those specific exceptions essentially parallel the federal exceptions. Again, Ruben N.'s receipt of medical assistance does not fall within any of the New York statutory exceptions.

In addition to the referenced exceptions, special provision is made for assistance provided to an individual to the extent the assistance is provided as a result of an injury incurred as the result of a third party's negligence. The federal provisions set forth the requirements of a state plan, relating to the liability of third parties to pay for care and services.

> "[T]he State . . . will take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the plan . . .

> "(B) that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where

the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability" (42 USC § 1396a [a] [25]).

New York's compliance with that requirement is contained in Social Services Law § 104-b and is an exception to the no-recovery provision of Social Services Law § 369. "Nothing contained in this subdivision shall be construed to alter or affect the right of a social services official to recover the cost of medical assistance provided to an injured person in accordance with the provisions of section one hundred four-b of this chapter" (Social Services Law § 369 [2] [c]; see 18 NYCRR 360-7.11 [b] [5]). The New York regulations governing medical assistance liens and recoveries are set forth in 18 NYCRR 360-7.11. The regulations repeat the standard that no adjustment or recovery for medical assistance correctly paid may be made except in accordance with specific exceptions. The exceptions specified in the regulations correspond to those in the statute.

As there is no specific authorization for recovery of medical assistance correctly paid to Ruben N. prior to August 23, 2002 apart from the Medicaid lien, to allow such recovery would be in direct contravention of the federal and state statutes. The DSS does not address the no-recovery provisions of the federal and state statutes, apart from an assertion in its brief that the Omnibus Budget Reconciliation Act of 1993 (Pub L 103-66, 107 US Stat 312) gave the government a broader right of recovery from a supplemental needs trust remainder than from estates, referencing 42 USC § 1396p (b) (1). The only basis for the claim of the DSS to such recovery is the language required to be placed in a supplemental needs trust.

The DSS's argument that the language required to be placed in a supplemental needs trust effectively amended the provisions restricting recovery, fails to account for the language in Social Services Law § 369 (2) (b) (i) that "[n]otwithstanding any inconsistent provision of this chapter or other law," there may be no adjustment or recovery on account of medical assistance correctly paid. There is nothing expressed or implied in the language of Social Services Law § 366 (2) (b) (2) (iii) that would indicate it was intended to alter or amend the provisions of Social Services Law § 369 (2) relating to recovery of medical assistance correctly paid. When an exception to the no-recovery provision is intended, the Legislature has specifically addressed

the issue, i.e. Social Services Law § 369 (2) (c) relating to the recovery of a Medicaid lien. Presumably, had the Legislature intended to amend the provisions relating to the scope of recovery from individuals for whom a supplemental needs trust was created for medical assistance correctly provided to the individual prior to the creation of the supplemental needs trust, in addition to any Medicaid lien, it would have amended Social Services Law § 369 (2).

Such an amendment could not be made to New York law unless the Congressional enactment of the provisions relating to exception trusts, 42 USC § 1396p (d), also amended section 1396p (b), relating to the recovery of medical assistance correctly paid. As noted previously, 42 USC § 1396a (a) (18) requires states to comply with 42 USC § 1396p. There is nothing in 42 USC § 1396p (d) (relating to treatment of trust amounts in determining eligibility) that would indicate it was intended to alter or interfere with the provisions of section 1396p (b) (limiting the scope of recovery of medical assistance correctly paid).

Moreover, the DSS's argument that the language required of supplemental needs trusts, in effect, amended other, related statutory provisions was unsuccessfully made in a different context by individuals seeking to avoid satisfaction of Medicaid liens until after the death of the beneficiary of a supplemental needs trust. The Court of Appeals rejected that argument with analysis that is applicable to this case by analogy.

The Court of Appeals in *Cricchio v Pennisi* (90 NY2d 296 [1997]) reasoned that the federal and state statutes exempting funds held in supplemental needs trusts from the resource calculation related to determinations of eligibility. "Nothing expressed in or implied by those provisions indicates that they were intended to interfere with the different set of rules mandating the assignment of tort recoveries and recoupment from responsible third parties" (*Cricchio v Pennisi*, 90 NY2d at 308). The Court of Appeals observed: "Presumably, had the Legislature desired to alter the rules governing the enforcement of liens placed on tort recoveries, it would have amended Social Services Law §§ 104-b or 369 (2) (c), which specifically address that topic" (90 NY2d at 308). Those same statements could be made with regard to the assertion of the DSS that the supplemental needs trust language altered the rules relating to the recovery of medical assistance correctly paid.

The United States Court of Appeals for the Second Circuit reached the same result as did the Court of Appeals in *Cricchio*

*v Pennisi* (90 NY2d 296 [1997]), for what it stated were essentially the same reasons set forth by the New York Court of Appeals (*see Sullivan v County of Suffolk*, 174 F3d 282 [2d Cir 1999], *cert denied* 528 US 950 [1999]).

An additional basis for not interpreting Social Services Law § 366 (2) (b) (2) (iii) as having implicitly amended Social Services Law § 369 (2) is the treatment of public assistance at common law. In *Baker v Sterling* (39 NY2d 397 [1976]), the Court of Appeals noted that at common law no action could be maintained to recover public assistance, as the recipient of such assistance was not obliged to repay such assistance. A recovery statute is thus in derogation of the common law.

"The Legislature in enacting statutes is presumed to have been acquainted with the common law, and generally, statutes in derogation or in contravention thereof, are strictly construed, to the end that the common law system be changed only so far as required by the words of the act and the mischief to be remedied" (McKinney's Cons Laws of NY, Book 1, Statutes § 301 [a]). "The common law is never abrogated by implication. Statutes in contravention thereof cannot be extended by construction or by doubtful implication, to include cases or matters not fairly within the terms of the act, or within the reason as well as the words thereof" (*id.* § 301 [b]).

### Medicaid Lien

The federal and state regulations addressed to third-party responsibility for injuries suffered by an individual who receives medical assistance as a result of those injuries, and the lien that may be asserted against a right of action the recipient may have against that third party, require further discussion of the assistance Ruben N. received during the period from July 14, 1997 through August 23, 2002. As noted, part of the assistance received by Ruben N. during that period was attributable to the malpractice of a third party, a doctor at the hospital where the spinal surgery was performed.

Pursuant to Social Services Law § 104-b, whenever a recipient of assistance has a right of action against a third party for injuries suffered by the recipient, the relevant public welfare official has a right to assert a lien against the prospective recovery. The public welfare official fixes the amount of the lien. The amount of the lien may be amended from time to time, including in response to notice that an action against the third party is proposed to be settled. The lien asserted may not exceed the

total amount of assistance and care furnished to the recipient on and after the date when the recipient suffered the injuries at the hands of the third party (Social Services Law § 104-b [1]). The Medicaid lien in this case, therefore, could have no relevance to the assistance received by Ruben N. prior to July 14, 1997.

The concept that third parties who have a responsibility to the recipient to provide for the cost of medical services the recipient receives, whether through insurance, a duty of support, or as a tortfeasor, is part of the principle that Medicaid should be a payor of last resort. The State is required to have in effect laws pursuant to which, to the extent that medical assistance has been provided, "the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services" (*see* 42 USC § 1396a [a] [25] [H]).

> "The recoupment of Medicaid funds from responsible third parties is accomplished by Federal directives that the State plan include assignment, enforcement and collection mechanisms (*see* 42 USC § 1396k [a] [1] [A]; § 1396a [a] [25] [I]). Specifically, as a condition of eligibility, an applicant must assign to the DSS any rights he or she has to seek reimbursement from any third party up to the amount of medical assistance paid (42 USC § 1396k [a] [1] [A]; 42 CFR 433.146 [c]; Social Services Law § 366 [4] [h] [1]; 18 NYCRR 360-7.4 [a] [6])" (*Cricchio v Pennisi*, 90 NY2d at 305).

> "To enable the public welfare official to enforce its substantive right to pursue repayment from responsible third parties, the New York Legislature enacted Social Services Law § 104-b, which authorizes DSS to place a lien for public assistance on personal injury claims and suits against third parties to the extent of the expenditures made on the recipient's behalf" (*Cricchio v Pennisi*, 90 NY2d at 306 [citation omitted]).

There has been litigation in New York over the scope of a Medicaid lien. In addition to *Cricchio v Pennisi* (90 NY2d 296 [1997]), which held the lien had to be repaid prior to the creation of a supplemental needs trust from the proceeds of the settlement, the Court of Appeals in *Calvanese v Calvanese* (93 NY2d 111 [1999], *cert denied* 528 US 928 [1999]) held the lien attached to the total of all settlement proceeds, not just to the portion of the settlement attributable to medical expenses. The

issue before the court in *Calvanese v Calvanese* (93 NY2d 111 [1999]) was the extent to which the proceeds of a settlement with a tortfeasor were available to satisfy a Medicaid lien. The recipient had argued that only that portion of the settlement that was attributable to past medical expenses should be available to satisfy the lien. The Court of Appeals held the total amount of the settlement was available to satisfy the lien. That holding is cast into doubt by the decision of the United States Supreme Court in *Arkansas Dept. of Health & Human Servs. v Ahlborn* (547 US 268 [2006]).

The United States Supreme Court, in *Arkansas Dept. of Health & Human Servs. v Ahlborn* (547 US 268 [2006]), held that the requirement that states seek recovery from liable third parties (*see* 42 USC § 1396k [a]) only authorizes an assignment of rights to payment for medical expenses. "[T]he statute does not sanction an assignment of rights to payment for anything other than medical expenses—not lost wages, not pain and suffering, not an inheritance" (*Arkansas Dept. of Health & Human Servs. v Ahlborn*, 547 US at 281). The Supreme Court held that the right of the State of Arkansas to recover was limited to that portion of the settlement that was attributable to the medical care expenses. The federal anti-lien provisions limit the state's right to recovery to just that which is authorized specifically by the statute, payments that may constitute reimbursement for medical costs (*see Arkansas Dept. of Health & Human Servs. v Ahlborn*, 547 US 268, 283-285 [2006]). The Supreme Court's analysis included the following reference:

> "the federal statute places express limits on the State's powers to pursue recovery of funds it paid on the recipient's behalf. These limitations are contained in 42 USC §§ 1396a (a) (18) and 1396p. Section 1396a (a) (18) requires that a State Medicaid plan comply with § 1396p, which in turn prohibits States (except in circumstances not relevant here) from placing liens against, or seeking recovery of benefits paid from, a Medicaid recipient" (*Arkansas Dept. of Health & Human Servs. v Ahlborn*, 547 US 268, 283 [2006]).

The United States Supreme Court continued the referenced quote with the "anti-lien" language of 42 USC § 1396p (a) and the "no adjustment or recovery of correctly paid assistance" language of 42 USC § 1396p (b).

While the continuing validity of the holding of *Calvanese v Calvanese* (93 NY2d 111 [1999]) is arguably in doubt, the review

of the relevant statutes conducted by the court in that case is instructive. The State acquires the rights of recipients to payments from third parties for medical assistance that has been provided through assignment, subrogation, and the enforcement of lien provisions. A recipient must assign to the DSS any benefits available to him or her from a third party for medical assistance as a condition of eligibility for receipt of assistance (*see* Social Services Law § 366 [4] [h] [1]). Once benefits are provided to a recipient, the State is subrogated to any rights the recipient has to third-party reimbursement (*see* Social Services Law § 367-a [2] [b]); but the DSS as subrogee cannot recover more from the third party than the recipient could have (*see* *Calvanese v Calvanese*, 93 NY2d at 119). The State may seek to enforce its rights directly or rely upon the lien provisions. However, the State's right to recovery of benefits is the same whether it sues directly or uses the lien provisions, as Social Services Law § 104-b has been held to be a procedural tool for enforcement of the assignment and subrogation rights (*see* *Calvanese v Calvanese*, 93 NY2d at 117, citing *Baker v Sterling*, 39 NY2d 397 [1976]).

The third-party tortfeasor in this case was only responsible for the medical costs incurred as a result of his negligence. Ruben N. could not have sought recovery from the third-party tortfeasor for those aspects of his medical needs that were attributable to his having Down syndrome, which needs existed before and continued after the third-party tortfeasor's negligence. The DSS's rights under an assignment or subrogation, enforced through a Medicaid lien, are therefore limited to the medical assistance the DSS provided as a consequence of the third-party tortfeasor's negligence and for which the third-party tortfeasor was liable to reimburse Ruben.

The Court of Appeals has recognized that "[i]n order to facilitate settlement, the agency may agree to reduce the amount it will accept in satisfaction of its lien" (*Calvanese v Calvanese*, 93 NY2d at 121).

The DSS agreed to settle its Medicaid lien for the payment of the sum of $102,423.56. There is no indication in the DSS's letter regarding the amount it was claiming under the lien, to be paid from the proceeds of the settlement at the time of settlement, was anything other than that amount. The Supreme Court's amended order of August 23, 2002, approving the settlement of the medical malpractice action, provided for the payment of that amount to the DSS, and provided that it was in

satisfaction of the Medicaid lien to the date of the order. As noted, the regulations, and *Cricchio v Pennisi*, required the resolution of the Medicaid lien, as regards the settlement proceeds, before the remainder of the proceeds could be disregarded for the purposes of eligibility by placement in a supplemental needs trust (*see* 18 NYCRR 360-4.5; *see also Cricchio v Pennisi*, 90 NY2d 296 [1997]).

In its motion in the Mental Hygiene Law article 81 proceeding, the DSS asserted that part of the $632,714.22 it was seeking from the trust corpus was attributable to the services Ruben N. received from July 14, 1997 to December 11, 2001, without regard to the fact it had resolved the lien. The DSS took a different factual position on appeal. There are two footnoted references to the amount of the Medicaid lien in the DSS's brief on appeal, footnote 4 on page 3 and footnote 6 on page 17. "Based on internal inquiries not reflected in the record, DSS acknowledges here the guardian was correct, and the 102,000 [*sic*] was the full amount of Medicaid expended as a result of the alleged malpractice."

The full amount of the Medicaid lien having been satisfied, as is asserted in the brief of the DSS on appeal, the claim of the DSS for further recovery for assistance provided from July 14, 1997 to August 23, 2002 is predicated on the language in the supplemental needs trust. Upon the same analysis that is applicable to the period from July 1, 1992 to July 13, 1997, holding that the language in the supplemental needs trust does not give the DSS a right to recover any of the assistance which was correctly paid to Ruben N. during that period, the DSS is not entitled to recoup any of the medical assistance correctly paid to Ruben N. from July 14, 1997 to August 23, 2002 either; apart from the sum it already received pursuant to the resolution of the Medicaid lien. The federal statutory limitations on liens relating to medical assistance correctly paid (*see* 42 USC § 1396p), and the State's obligation to comply with those limitations (*see* 42 USC § 1396a [a] [18]), can be seen to be all the more controlling when considered in light of the decision of the United States Supreme Court in *Arkansas Dept. of Health & Human Servs.* v *Ahlborn* (547 US 268 [2006]), stressing the limitations on a state's entitlement to recoup assistance that has been correctly provided.

Contrary to the assertion of the DSS, the provisions relating to the treatment of trust assets for purposes of eligibility to receive benefits that require the inclusion of recoupment

language in a supplemental needs trust did not create a further exception to the no-recovery provisions as they relate to the assistance provided to Ruben N. prior to the settlement of the malpractice action in August 2002 (*cf. Cricchio v Pennisi*, 90 NY2d 296 [1997]). The DSS is not entitled to further recoupment of any assistance provided to Ruben prior to August 24, 2002.

### Postsettlement Assistance

Upon the settlement of the negligence action, Ruben N. was in possession of assets and resources that would have rendered him ineligible for continuing medical assistance but for the special treatment accorded the assets placed in a supplemental needs trust. The quid pro quo for disregarding those assets for purposes of eligibility is that the State will be reimbursed from the corpus of the trust, if any, for the assistance provided while the assets were disregarded. There was no interruption of receipt of assistance by Ruben N. while the petition for guardianship and creation of the supplemental needs trust was pending judicial consideration. The DSS is entitled to reimbursement for all the medical assistance provided to Ruben N. on and after August 24, 2002.*

Accordingly, the order is modified, on the law, by deleting the provision thereof denying that branch of the motion of the DSS which was for reimbursement of the amount of medical assistance provided by Medicaid to Ruben N. from August 24, 2002 through September 22, 2003, and substituting therefor a provision granting that branch of the motion; as so modified, the order is affirmed insofar as appealed from, and the matter is remitted to the Supreme Court, Kings County, for a determination of the amount of medical assistance provided by Medicaid to Ruben N. from August 24, 2002 through September 22, 2003 that was not previously reimbursed, and for entry of an appropriate judgment.

SPOLZINO, J.P., SANTUCCI and FLORIO, JJ., concur.

---

* To the extent the reasoning of the Third Department in *Matter of Abraham XX.* (36 AD3d 1085 [2007], *lv granted* 10 NY3d 706 [2008]) might be asserted in support of a claim for recovery of medical assistance provided to a recipient prior to the occurrence of a third-party tort, and/or provided prior to the settlement of a third-party tort claim and satisfaction of any presettlement lien, for the reasons we have stated, we would not agree that the election to create a supplemental needs trust with the requisite eligibility language would authorize the recovery of such assistance.

Ordered that the order is modified, on the law, by deleting the provision thereof denying that branch of the motion of the Department of Social Services of City of New York which was for reimbursement of the amount of medical assistance provided by Medicaid to Ruben N. from August 24, 2002 through September 22, 2003, and substituting therefor a provision granting that branch of the motion; as so modified, the order is affirmed insofar as appealed from, with costs to the respondent, and the matter is remitted to the Supreme Court, Kings County, for a determination of the amount of medical assistance provided by Medicaid to Ruben N. from August 24, 2002 through September 22, 2003 that was not previously reimbursed, and for entry of an appropriate judgment.